81 P.3d 394

**James ADAMS, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee.**

**No. 24753.**

Supreme Court of Hawai'i.

Dec. 22, 2003.

James Adams, appearing pro se, on the briefs, petitioner-appellant.

Tharrington T. Trusdell and Leslie S.H. Chow, Deputy Prosecuting Attorneys, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

In 1998, petitioner James Adams entered a plea of no contest in the Family Court of the Third Circuit, the Honorable Riki May Amano presiding, to one count of a reduced charge of sexual assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–731(1)(a) (Supp.1997) (Count II), and four counts of sexual assault in the third degree, in violation of HRS § 707–732(1)(b) (1993) (Counts III, IV, V, and VI). Adams appeals from the November 19, 2001 findings of fact, conclusions of law and order of the third circuit court, the Honorable Greg K. Nakamura presiding, denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition. Adams asserts that: (1) the family court lacked subject matter jurisdiction over Counts III, IV, V, and VI of the indictment inasmuch as Adams was not a parent or a guardian of Complainant B, nor did he have legal or physical custody of Complainant B; [1] (2) the circuit court lacked subject matter jurisdiction over his Rule 40 petition which he incorrectly filed, acting pro se, with the circuit court rather than the family court; (3) Counts III, IV, V, and VI were barred by the statute of limitations which he did not waive; and (4) he was denied the effective assistance of counsel inasmuch as trial counsel failed to inform him of the statute of limitations defense regarding Counts III, IV, V, and VI. Because Adams's claims are without merit, we affirm the circuit court's order.

## I. BACKGROUND

On October 24, 1997, Adams was charged by indictment in the Family Court of the Third Circuit, case number FC–CR. No. 97–416, in connection with the alleged sexual assault of two girls, one of whom was his daughter (Complainant A) and the other, a girl of no relation living with her mom in the same home as Adams (Complainant B). The indictment provided:

*COUNT I*

Between the year 1989, through and including the year 1994, the exact date and time being unknown, ... ADAMS did knowingly subject to sexual contact [Complainant A], another person who was less than fourteen years old, thereby committing the offense of Sexual Assault in the Third Degree, in violation of [HRS] Section 707–732(1)(b), ... as amended.

*COUNT II*

Between the year 1995, through and including the year 1997, the exact date and time being unknown, ... ADAMS did knowingly subject to sexual penetration [Complainant A], another person who was less than fourteen years old, thereby committing the offense of Sexual Assault in the First Degree, in violation of [HRS] Section 707–730(1)(b), ... as amended.

*COUNT III*

During the year 1991, the exact date and time being unknown, but at a time different than that stated in Counts IV, V, and VI, ... ADAMS did knowingly subject to sexual contact [Complainant B], another person who was less than fourteen years old, thereby committing the offense of Sexual Assault in the Third Degree, in violation of [HRS] Section 707–732(1)(b), ... as amended.

*COUNT IV*

During the year 1991, the exact date and time being unknown, but at a time different than that stated in Counts III, V, and VI, ... ADAMS did knowingly subject to sexual contact [Complainant B], another person who was less than fourteen years old, thereby committing the offense of Sexual Assault in the Third Degree, in violation of [HRS] Section 707–732(1)(b), ... as amended.

*COUNT V*

During the year 1991, the exact date and time being unknown, but at a time different than that stated in Counts III, IV, and VI, ... ADAMS did knowingly subject to sexual contact [Complainant B], another person who was less than fourteen years

---

1. Pursuant to HRS § 571–14(1) (Supp.1997), the family court "shall have exclusive original jurisdiction[ ] ... [t]o try any offense committed against a child by the child's parent or guardian or by any other person having the child's legal or physical custody...."

old, thereby committing the offense of Sexual Assault in the Third Degree, in violation of [HRS] Section 707–732(1)(b), . . . as amended.

*COUNT VI*

During the year 1991, the exact date and time being unknown, but at a time different than that stated in Counts III, IV, and V, . . . ADAMS did knowingly subject to sexual contact [Complainant B], another person who was less than fourteen years old, thereby committing the offense of Sexual Assault in the Third Degree, in violation of [HRS] Section 707–732(1)(b), . . . as amended.

At arraignment and plea on November 3, 1997, Judge Nakamura presiding, Adams entered a plea of not guilty.

On March 5, 1998, a change of plea hearing was held before the family court, the Honorable Riki May Amano presiding. At the hearing, Adams stated that he had reached a plea agreement with the prosecution and wished to change his plea to no contest to the lesser included offense of sexual assault in the second degree in Count II and no contest to Counts III, IV, V, and VI. Judge Amano thereupon advised Adams in pertinent part as follows:

THE COURT: Now, Mr. Adams, when you plead no contest to these serious charges, they're all felonies, the—uh, you give up any rights that you may not be able to get back after today, so I have to be real sure that this is what you want to do.

I'm going to ask you some questions. Please answer me out loud.

Judge Amano went on to ask Adams about his age and education. Upon finding there to be a sufficient factual basis for Counts II, III, IV, V, and VI, Judge Amano conducted the following colloquy with Adams:

THE COURT: The Court finds a sufficient factual basis for these five counts to exist.

Mr. Adams, these five counts, one of them is a B felony and the other four are C felonies. The B felony exposes you to a possible prison term of ten years plus a possible fine of $25,000. Each of the C

felonies expose you to a possible five years of prison plus a fine of $10,000.

So each of the counts that you're pleading to today, and even though, uh, when you say no contest to the Court, it tells the Court that you're not contesting the charges and, therefore, the Court will find you guilty of these offenses. But each of the charges that you're pleading to today, if they were to be sentenced—if you were to be sentenced back to back or each of the counts, you could face a possible prison term of 30 years all together and a possible fine of $65,000. Do you understand that?

[Adams]: I do.

THE COURT: Have you had a chance to fully discuss that issue with [trial counsel]?

[Adams]: Yes.

THE COURT: All right. When you plead no contest, you give up as I said several rights, including the right to a trial. There will be no trial at all because you're pleading no contest and the Court is going to find you guilty. And when say no trial, it—sometimes we don't realize and until it pertains to us and then this case pertains to you, that there are several constitutional and legal rights that are protected under the umbrella of trial.

These rights include your right to confront witnesses. The right to see, hear, and question any and all witnesses that come here to trial to testify in the State's case. You have the right to bring your own witnesses to Court. Your lawyer could subpoena people, force them to come to Court to testify.

You have the right to tell the jury your side of the story. You have the right to make the State prove each and every element of each and every count against you beyond a reasonable doubt. It's the highest standard of proof in our system of law.

And when this case—if this case were to go to trial, all 12 people on the jury have to unanimously agree that the State made its burden of proof. Met its burden of proof. Do you understand that?

[Adams]: I do.

THE COURT: So when we say we give up—you're giving up your right to trial, it's all of these rights that are included.

You might also know that you have the right to remain silent. And as you stand here today, no one could force you to take the stand and testify or make any statements at all about these charges. This is another right that you will be giving up by pleading no contest. Do you understand what I have said?

[Adams]: I do, Your Honor.

THE COURT: Any questions about those rights?

[Adams]: No.

THE COURT: You also at trial would have the right to put on your—a defense for the case. Have you have a chance to discuss this case to your satisfaction with Mr. De Lima?

[Adams]: Yes, I have.

THE COURT: All right. As to all of these rights and your possible defenses, uh, do you have any questions, sir?

[Adams]: No.

THE COURT: All right. The—uh, is anyone forcing you, threatening you, or putting pressure on you to plead no contest to these charges today?

[Adams]: No one.

THE COURT: Is anyone making you any—I'm sorry, is anyone—are you doing this to cover up for someone else or protect someone else from prosecution?

[Adams]: No, I'm not.

THE COURT: Are you doing this of your own free will?

[Adams]: Yes, I am, Your Honor.

THE COURT: Now, Mr. Adams, uh, my understanding there's an agreement you have with the State. The agreement is that the State is—has said that as to sentencing, that when they come to Court and make a recommendation to the Court for sentencing, they will recommend that all the sentencing for the five counts be served together. We call that concurrent. So that means that the most you would be exposed to in terms of prison would be ten years because that's the B felony, right,

and everything else will be served together with that.

Also, they've agreed to reduce the Sex Assault First Degree to Second. The charge—the B felony that you're pleading to was originally an A felony, Sex Assault First, but they've agreed to reduce that in exchange for your agreement to plead to that.

[Adams]: That's what I understand.

. . . .

Agreeing to be bound by the plea agreement, Judge Amano stated:

THE COURT: All right. The Court has promised you based upon what I understand of your situation[ ] . . . that I will go along with the State's recommendation to concurrent. So whatever sentence you will get will be concurrent, run together, all five counts.

. . . .

Thereafter, the following exchange occurred:

THE COURT: All right. Uh, you understand that my promise to sentence you concurrent is based upon your promise to me—your various promises to me that are set out in the guilt/no contest plea attachment?

[Adams]: I do understand that.

THE COURT: All right. Any questions about that?

[Adams]: No.

THE COURT: All right. Assuming you follow everything then I'm bound. If you do not follow these items, then of course I'm free to sentence you in any legal way that I see fit.

Mr. Adams, are you aware that if you are not a citizen of the United States that your conviction for these offenses may result in your deportation, denial from naturalization, or exclusion from admission to this country?

[Adams]: I am a U.S. citizen.

THE COURT: And you area aware of the law if you are not?

[Adams]: I am now.

. . . .

Prior to accepting Adams's no contest plea, Judge Amano questioned Adams regarding the services of his trial counsel, Brian De Lima:

> THE COURT: Okay, Uh, finally, I would like to ask you if you have any complaint or questions about the services or advice that Mr. De Lima offered you?
>
> [Adams]: No.
>
> THE COURT: Are you satisfied with the services and advice that he has given you?
>
> [Adams]: I am very much so.

After Adams signed the change of plea form in open court, Judge Amano determined that Adams had knowingly and voluntarily offered his no contest plea, stating:

> THE COURT: The document has been returned to the bench, and it does reflect the signature of Mr. Adams at the bottom of page two in the space provided to be signed in open Court after questioning.
>
> Sir, after speaking with you, seeing the way you have given answers to my questions, hearing your answers, I find that you are knowingly and voluntarily offering your no contest plea to these five counts. I accept your plea, find you guilty of Sex Assault in the Second Degree and four counts of Sex Assault in the Third Degree.

On June 2, 1998, Judge Amano sentenced Adams to a ten-year term of imprisonment for Count II and five-year terms of imprisonment each for Counts III, IV, V, and VI, with all terms to run concurrently. On June 4, 1998, the family court approved and ordered the prosecution's motion to nolle prosequi Count I with prejudice in light of Adams's plea of no contest. Adams did not take a direct appeal from his conviction or sentence.

On April 18, 2000, Adams, acting pro se, filed an HRPP Rule 40 petition for post-conviction relief with the third circuit court, alleging the following three grounds for relief: (1) the indictment was illegal inasmuch as it was brought beyond the statute of limitations with respect to Counts III, IV, V, and VI; (2) trial counsel rendered ineffective assistance of counsel; and (3) the indictment violates Adams's constitutional rights by "merging two sets of distinct offenses, one being invalid." De Lima thereafter moved ex parte to withdraw as counsel for Adams, which Judge Amano granted on June 30, 2000. Deputy Public Defender David Kuwahara was subsequently assigned to Adams's case. However, on August 17, 2000, the family court, Judge Nakamura presiding, granted the Office of the Public Defender's motion to withdraw as counsel and substituted Michael G.M. Ostendorp as counsel for Adams. On July 10, 2001, Adams filed an amended Rule 40 petition with the third circuit court, asserting a fourth ground for relief: the family court lacked jurisdiction over the indictment inasmuch Adams did not have the requisite relationship with Complainant B under HRS § 571–14(1).[2]

Adams's Rule 40 petition came on for hearing before Judge Nakamura on September 6, 2001. The prosecution advised the court that it would only be calling De Lima to testify. Adams did not call any witnesses and agreed to stipulate to De Lima's testimony. On November 19, 2001, the circuit court entered its findings of fact (FOF), conclusions of law (COL), and order denying Adams's Rule 40 petition. Adams timely appealed.

## II. STANDARDS OF REVIEW

### A. Findings of Fact

A court's FOF are reviewed under the clearly erroneous standard, *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994), and "will not be set aside on appeal unless they are determined to be clearly erroneous." *State v. Joyner*, 66 Haw. 543, 545, 669 P.2d 152, 153 (1983) (citations omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Dan*, 76 Hawai'i at 428, 879 P.2d at 533 (citation and internal quotations omitted); *see also State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987).

2. *See supra* note 1.

*State v. Meyer*, 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995).

### B. *Conclusions of Law*

 "An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test. A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (citations and internal quotation marks omitted).

### C. *Jurisdiction*

 The existence of jurisdiction is a question of law that this court reviews de novo under the right/wrong standard. *State v. Adam*, 97 Hawai'i 475, 481, 40 P.3d 877, 883 (2002) (citations omitted).

### D. *Ineffective Assistance of Counsel*

 "In assessing claims of ineffective assistance of counsel, the applicable standard is whether, viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan*, 76 Hawai'i at 427, 879 P.2d at 532 (internal quotation marks, brackets, and citation omitted).

> [T]he defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. Determining whether a defense is potentially meritorious requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker.... Accordingly, no showing of actual prejudice is required to prove ineffective assistance of counsel.

*Barnett v. State*, 91 Hawai'i 20, 27, 979 P.2d 1046, 1052–53 (1999) (ellipsis in original) (citations and internal quotation marks omitted).

## III. *DISCUSSION*

### A. *Jurisdiction*

#### 1. **Jurisdiction over the subject matter of the indictment**

 As previously noted, HRS § 571–14(1) provides in pertinent part that the family court "shall have exclusive original jurisdiction[ ] ... [t]o try any offense committed against a child by the child's parent or guardian or by any other person having the child's legal or physical custody...." Adams contends that the family court lacked subject matter jurisdiction over Counts III, IV, V, and VI of the indictment inasmuch as he was not a parent or a guardian of Complainant B, nor did he have legal or physical custody of Complainant B.

At the outset, we note that, pursuant to HRPP Rule 40(a)(3) (2000):

> *Inapplicability. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon **or were waived**. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.*

(Emphases added.)

 Adams raised the issue of the family court's jurisdiction for the first time in his Rule 40 petition. Inasmuch as it could have been raised before he entered his plea or on direct appeal of his original conviction, the issue would ordinarily be considered waived under HRPP Rule 40(a)(3). However, jurisdiction of the offense charged and of the person of the accused is a fundamental and indispensable prerequisite to a valid

prosecution. *State v. Meyers*, 72 Haw. 591, 593, 825 P.2d 1062, 1064 (1992) (citations omitted). Indeed,

> [q]uestions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

*Amantiad v. Odum*, 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999) (internal citations omitted). We therefore turn to Adams's contention that the family court lacked subject matter jurisdiction over Counts III, IV, V, and VI of the indictment.

Adams does not specifically challenge any of the circuit court's FOFs or COLs that relate to the family court's jurisdiction over Counts III, IV, V, and VI, as required by Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(C) (2000). Nevertheless, to the extent that we are able to glean from his brief and the circuit court's order the COL pertinent to his argument, we will address Adams's contention in the interest of justice and fairness. *See Dan*, 76 Hawai'i at 428, 879 P.2d at 533.

 In its November 19, 2001 order, the circuit court made the following relevant COLs pertaining to the issue of jurisdiction over Counts III, IV, V, and VI of the indictment:

B. FAMILY COURT JURISDICTION

1. The indictment was filed under the case number "FC–CR. NO. 97–416." In the Third Circuit, "FC–CR" is the designation used for family court criminal cases;

2. The Court takes judicial notice of the following:

a. In 1997 and 1998, in the Third Circuit Court, there was no circuit court judge specifically assigned to Family Court;

b. In 1997 and 1998, in felony cases having the designation "FC–CR", a circuit court judge was assigned the case without first specifically being appointed as a "Family Court" judge.

3. It is true that HRS Sec. 571–14(1) (1997) granted original jurisdiction to the family court:

> To try any offense committed against a child by the child's parent or guardian or by any other person having the child's legal or physical custody; * * *;

4. *However, HRS Sec. 571–4 states in part as follows: The several judges of the second, third, and fifth circuits, and of any other circuits hereafter created by the Legislature, shall, when exercising jurisdiction under this chapter, be judges of the family courts of their respective circuits;*

5. *In this case, the trial judge was either properly acting as a family court judge or a circuit court judge.*

6. If the family court had jurisdiction over this matter pursuant to HRS Sec. 571–14(1) (1997), then the trial judge acting as a family court judge properly exercised jurisdiction over the matter.

7. If the family court did not have jurisdiction over this matter, then the trial judge acting as a circuit court judge properly exercised jurisdiction over the matter;

8. If the latter were the case, then the only impropriety would have been that the case number should have started with "CR. NO." and not "FC–CR."

9. This would not justify dismissing the four class C felonies.

10. The court had jurisdiction of this matter.

As an initial matter, we point out that, in *State v. Alagao*, 77 Hawai'i 260, 883 P.2d 682 (App.1994), the defendant therein moved to dismiss the indictment on the ground that the family court did not have subject matter jurisdiction with respect to the crimes charged. *Id.* at 261, 883 P.2d at 683. Like the instant case, the source of the family court's jurisdiction in *Alagao* was the portion of HRS § 571–14(1) granting the family court exclusive original jurisdiction over offenses committed against a child by any person having the child's "physical custody." *See id.* at 262–63, 883 P.2d at 684–85.

HRS chapter 571 does not define the term "physical custody." In *Alagao*, the Interme-

diate Court of Appeals (ICA) relied upon Hawai'i's Uniform Child Custody Jurisdiction Act, HRS § 583–2(8) (1985), to define "physical custody" as "the actual possession and control of a child." 77 Hawai'i at 263, 883 P.2d at 685. The ICA went on to hold that, inasmuch as "the court, not the jury, decides the facts relevant to the question of subject matter jurisdiction[,]" *id.* at 262, 883 P.2d at 684, the family court erred by not reaching the question of fact whether the defendant had physical custody, i.e., actual possession and control, of the complainant during the times of the alleged crimes, *see id.* at 263, 883 P.2d at 685. The ICA, therefore, vacated the defendant's conviction and remanded the case to the family court instructing it to, *inter alia,* "decide the factual question dispositive of the subject matter jurisdiction issue." *Id.* at 264, 883 P.2d at 686.

In the instant case, the circuit court determined that Judge Amano had jurisdiction over Counts III, IV, V, and VI of the indictment irrespective of the factual question whether Adams had physical custody of Complainant B during the times of the alleged crimes. We agree with the circuit court.

As correctly pointed out by the circuit court, HRS § 571–4 (1993) provides in pertinent part that "[t]he several judges of the second, third, and fifth circuits[ ] ... shall, when exercising jurisdiction under ... chapter [571], be judges of the family courts of their respective circuits." Indeed, in Hawai'i, the family courts are *"divisions* of the circuit courts of the State[.]" HRS § 571–3 (1993) (emphasis added). They are not separate and distinct courts from the circuit courts of the State. *See* Hse. Stand. Comm. Rep. No. 130, in 1965 House Journal, at 551 ("This section clearly indicates that the family courts shall be considered as *coequal divisions* of the circuit courts and not as inferior courts." (Emphasis added.))

We take judicial notice of the fact that Judge Amano was appointed to the Circuit Court of the Third Circuit on April 12, 1993 and was serving as a circuit court judge when she presided over Adams's case. It is undisputed that the family court had jurisdiction over Count II of the indictment. Thus, pursuant to HRS § 571–4, Judge Amano was deemed to be a family court judge for purposes of exercising jurisdiction over Count II.

As for Counts III, IV, V, and VI of the indictment, even assuming that Adams did not have physical custody of Complainant B during the times of the alleged offenses, and the family court was, therefore, without jurisdiction over those counts of the indictment, the fact remains that Judge Amano was serving as a circuit court judge when she presided over Adams's case and thereby had authority over both circuit and family court matters. *See* HRS § 571–4. Accordingly, we hold that, notwithstanding any lack of jurisdiction on the part of *the family court* over Counts III, IV, V, and VI of the indictment, *Judge Amano,* in her capacity as a circuit court judge, properly exercised jurisdiction over those counts. Consequently, although not directly alleged by Adams, any error by virtue of the fact that Counts III, IV, V, and VI of the indictment should have been brought under a separate indictment in circuit court or that the indictment, at least with respect to those counts, was misidentified as a family court criminal matter is clearly harmless. *Cf. Domingo v. State,* 76 Hawai'i 237, 873 P.2d 775 (1994) (applying the harmless error standard to hold that the circuit court's failure to expressly state findings of fact and conclusions of law in denying the defendant's Rule 40 petition was harmless error).

## 2. Jurisdiction over Adams's Rule 40 petition

■ Pursuant to HRPP Rule 40(b) (2000):

**Institution of Proceedings.** A proceeding for post-conviction relief shall be instituted by filing a petition with the clerk of the court in which the conviction took place. The clerk shall then docket the petition as a special proceeding, and in cases of pro se petitions, promptly advise the court of the petition.

Adams contends that the circuit court was without jurisdiction to entertain his Rule 40 petition inasmuch as

his petition for post-conviction relief was not filed with the clerk of the court in which the conviction took place (Family Court of the Third Circuit). [Adams], proceeding pro se at first, erroneously filed the Petition in the Circuit Court of the Third Circuit when the Petition was to be filed in the Family Court of the Third Circuit. Therefore, the Circuit Court was without jurisdiction to entertain [Adams]'s Rule 40 Petition.

We disagree.

As previously emphasized, in Hawai'i, the family courts are not separate and distinct courts from the circuit courts but are *"divisions* of the circuit courts of the State[.]" HRS § 571–3 (emphasis added). Indeed, HRPP Rule 40(c) (2000), which sets forth the procedure for docket entry and filing of papers under the HRPP, delineates a procedure for filings in two courts, the circuit court and the district court. Nowhere in the HRPP is there a separate procedure governing docket entry and filing of papers in criminal cases in the family court of the circuit court.[3] Therefore, although Adams could have technically filed his petition with the clerk of the family court of the third circuit, he did not violate HRPP Rule 40(b) by filing his petition with the clerk of circuit court of the third circuit.

Regardless, we hold that Judge Nakamura properly exercised jurisdiction over Adams's Rule 40 petition, either in his capacity as a circuit court judge or as a family court judge. We take judicial notice of the fact that Judge Nakamura was appointed to the Circuit Court of the Third Circuit on April 18, 1994 and, like Judge Amano, was a circuit court judge when he presided over Adams's case. Judge Nakamura thereby had authority to preside over both circuit and family court matters. *See* HRS § 571–4. Even assuming that the family court, and not the circuit court, was required to consider and rule upon Adams's Rule 40 petition, pursuant to HRS § 571–4, Judge Nakamura would have properly been deemed to be a family court judge

for purposes of exercising jurisdiction over his petition.

### B. *Waiver of Statute of Limitations*

▉ Pursuant to HRS § 701–108(2)(c) (Supp.1997), a prosecution for a class C felony must be commenced within three years after it is committed. It is undisputed that the prosecution of Counts III, IV, V, and VI exceeded the three-year statute of limitations period. The circuit court, however, determined that Adams effectively waived the statute of limitations when he entered his plea of no contest. The circuit court's November 19, 2001 order sets forth the following relevant COLs:

#### A. STATUTE OF LIMITATIONS

. . . .

8. Petitioner's agreement to plead to a reduced charge in Count II and to Counts III, IV, V[,] and VI was the "agreed equivalent" to the State's agreement to accept pleas to those charges. In other words, Petitioner cannot argue that his plea to a reduced charge under [C]ount II ONLY is equivalent in value to the State's agreement to accept the Petitioner's pleas to BOTH the reduced charge in Count II AND to have Petitioner plead to Counts III, IV, V, and VI;

9. Therefore, Petitioner cannot take the position that he can retain the benefits of the plea agreement by keeping in place his plea as to the reduced charge of Sexual Assault in the Second Degree in Count II, but compel the State to give up the convictions as to Counts III, IV, V[,] and VI;

10. If the plea agreement were rescinded, then, Petitioner would face all the original charges contained in the indictment, to include the Sexual Assault in the First Degree charge as set forth in Count II and the charge set forth in Count I.

11. *Petitioner, by entering into the plea agreement, impliedly waived the statute of limitation defense he may have had in regard to Counts III, IV, V[,] and VI.* As indicated in *State v. Timoteo,* 87 Hawai'i 108, 952 P.2d 865 (1997), the protec-

---

3. We note that Rule 81(c) (2000) of the Hawai'i Family Court Rules expressly provides that "[c]ases for adults charged with the commission

of a crime coming within the jurisdiction of the family courts shall be governed by the [HRPP]."

tion of the statute of limitations is not a fundamental right under the United States Constitution nor Hawai'i Constitution and may be impliedly waived by conduct of the Defendant.

12. Since Petitioner cannot partially rescind the plea agreement and has impliedly waived any statute of limitations defense by entering into the plea agreement, Petitioner is not entitled to have his convictions as to Counts III, IV, V, and VI vacated.

(Emphasis added.)

In his points on appeal, Adams asserts that COLs 11 and 12 are wrong. We disagree.

In *State v. Timoteo*, 87 Hawai'i 108, 952 P.2d 865 (1997), the defendant was indicted for allegedly committing burglary in the first degree. 87 Hawai'i at 111, 952 P.2d at 868. At trial, during the settling of jury instructions, the defendant requested a jury instruction for the lesser included offense of simple trespass, which the circuit court thereafter gave the jury. *Id.* The jury found the defendant guilty of simple trespass. *Id.*

Following trial and upon the defendant's motion, the circuit court dismissed the defendant's conviction inasmuch as he had not been charged within the statute of limitations period for simple trespass. *Id.* The prosecution appealed. *Id.* In *Timoteo*, this court held that the statute of limitations is not jurisdictional and can be waived. *Id.* at 114, 952 P.2d at 871. The *Timoteo* court determined that the defendant had waived the statute of limitations when he requested the trial court to instruct the jury on the time-barred lesser included offense of simple trespass. *Id.* at 116, 952 P.2d at 873. Further, this court expressly held that "[n]o express waiver through an on-the-record colloquy was necessary" for the waiver to be effective. *Id.*

Adams attempts to distinguish *Timoteo*, arguing that:

Timoteo is distinguishable because in Timoteo, the defendant specifically requested the jury instruction or the time-barred lesser-included offense of simple trespass. *Id.* at 116 [952 P.2d 865]. Thus, whereas in Timoteo, the Defendant specifically sought to benefit by pleading to a lesser-included offense, [Adams] did not in the case at bar. [Adams] would not have plea-bargained to an offense, which the prosecution was time-barred from bringing in the first place.

The right to not be prosecuted outside a limitations period is no less important than the right to be tried in the district wherein the crime was committed.... Thus Timoteo, did not involve an important statutory right as [State v. Black, 66 Haw. 530, 668 P.2d 32 (1983)] (venue) and the case at bar (statute of limitations). Timoteo dealt solely with the defendant's right to a specific jury instruction.

Many progressive courts have held that a defendant may waive a statute of limitations so long as it is done expressly or knowing, intelligently and voluntary. See, for example, Padie v. State, 594 P.2d 50 (Alaska 1979).

From a policy standpoint, an on-the-record colloquy will prevent future disputes such as in the case at bar. See Tachibana v. State, 79 Hawai'i 226, 235–36, 900 P.2d 1293, 1302–03 (1995).

There was no evidence in the record that [Adams]'s waiver was knowing and voluntary. As in Black, [Adams] did not affirmatively act in any manner indicating that he was waiving the right at issue. Therefore the trial court committed reversible error when it concluded that [Adams] waived the statute of limitation defense for four (4) Class C felonies.

■ Adams completely misconstrues *Timoteo*. As previously stated, the *Timoteo* court squarely held that the statute of limitations is not jurisdictional and can be waived. *Id.* at 114, 952 P.2d at 871. Adams is therefore wrong in stating that "*Timoteo* dealt solely with the defendant's right to a specific jury instruction" and did not involve the issue of a waiver of the statute of limitations.

■ Additionally, Adams ignores the holding in *Timoteo* that an express waiver through an on-the-record colloquy is not required for there to be an effective waiver of the statute of limitations. In reaching this holding, the *Timoteo* court specifically distin-

guishes *Black* which, unlike *Timoteo*, involved the waiver of the constitutionally protected right of venue:

> Under different circumstances, we have required an express waiver of a right through an on-the-record colloquy. For example, in [*Black* ], we held that a defendant did not waive his right to insist on proof of venue by failing to raise this issue prior to his motion for judgment of acquittal. However, cases such as *Black* are distinguishable from the instant case because, unlike Timoteo, the defendant in *Black* did not affirmatively act in any manner indicating that he was waiving the right at issue. More importantly, unlike the statutory requirement that the prosecution must prove "that the offense was committed within [a specific] time period[,]" HRS § 701–114(1)(e), the venue requirement in *Black* is a constitutional right. Article I, section 14 of the Hawai'i Constitution specifically guarantees that a defendant has a right to a "public trial by an impartial jury of *the district wherein the crime shall have been committed,* ... or of such other district to which the prosecution may be removed with the *consent of the accused*[.]" (emphases added). Because the language of the Hawai'i Constitution specifically guarantees this right regarding venue unless the prosecution or trial court obtains "the consent of the accused[,]" *id.* (emphasis added), this "language clearly requires an affirmative act on [the] defendant's part indicating knowing and intelligent waiver." [*State v.]* *Miyashiro,* 3 Haw.App. [229,] 232, 647 P.2d [302,] 304 [ (1982) ].

> In contrast to the constitutional right regarding venue, there is no provision in the Hawai'i Constitution specifically requiring the "consent of the accused" with respect to waiving a statute of limitations. As stated, statutes of limitation are not constitutional protections, but rather, mere statutory "acts of grace conferred by the sovereign which limit its right to prosecute criminal offenders." [*State v.]* *Russell,* 62 Haw. [474,] 479, 617 P.2d [84,] 88 [ (1980) ] (citations omitted). Although HRS § 701–114(1)(e) statutorily requires the prosecution to adduce proof "that [an] offense was committed within [a specific] time period[,]" defendants can effectively waive the prosecution's failure to adduce proof without giving their express consent through an on-the-record colloquy. *Cf.* State v. Watson, 71 Haw. 258, 259, 787 P.2d 691, 692 (1990) (rejecting a defendant's contention "that there was error in sentencing him as a second [time] offender since the State introduced no evidence with respect thereto" because the record showed that "the prosecutor brought to the attention of the court a previous conviction and ... [the defendant]'s counsel made no objection to sentencing as a second [time] offender[,]" and, thus, "[a]ny error in failing to adduce proof was therefore waived").

*Timoteo,* 87 Hawai'i at 116, 952 P.2d at 873 (italicized emphasis and some brackets in original) (underscored emphases added).

Furthermore, it is well established that,

> *[g]enerally, a guilty plea made voluntarily and intelligently precludes a defendant from later asserting any nonjurisdictional claims [on appeal],* including constitutional challenges to the pretrial proceedings. Although the defendant may still challenge the sufficiency of the indictment or other like defects bearing directly upon the government's authority to compel the defendant to answer to charges in court, *claims of nonjurisdictional defects in the proceeding,* such as unlawfully obtained evidence and illegal detention, *will generally not survive the plea. A plea of nolo contendere is equivalent to a plea of guilty in terms of waiving alleged nonjurisdictional defects.*

*State v. Morin,* 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990) (citations omitted) (emphases added). *See also State v. Domingo,* 82 Hawai'i 265, 267–68, 921 P.2d 1166, 1168–69 (1996) (following *Morin* ).

At no point has Adams ever asserted that his no contest plea was anything other than knowingly and voluntarily entered. Moreover, the record clearly evinces that Adams knowingly and voluntarily entered his plea. As fully outlined *supra,* Section I, the family court conducted an extensive Rule 11 collo-

quy [4] with Adams prior to accepting his plea of no contest.

Further, Adams does not seek a withdrawal of his no contest plea, but, rather, a dismissal with prejudice of his conviction of and sentence for Counts III, IV, V, and VI.[5] As pointed out by the circuit court in COL 7, "[Adams] wants to retain the benefit of the bargain of the plea agreement by not having the original Sexual Assault in the First Degree charge as to Count II and the charge as to Count I reinstated[.]" Adams essentially seeks, therefore, a partial withdrawal or modification of the plea agreement.

We point out that Adams cites no authority pursuant to which this court may permit a partial withdrawal or modification of a plea agreement. Presumably Adams would be bound to the manifest injustice standard of HRPP Rule 32(d) (2000) governing withdrawals of guilty and no contest pleas. *See State v. Merino,* 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996) ("Where the request [to withdraw a plea] is made after sentence has been imposed, the 'manifest injustice' standard is applied." (Citation omitted.)) However, inasmuch as we hold *infra* that Adams effectively waived the statute of limitations defense for Counts III, IV, V, and VI upon entry of his plea, it is unnecessary to reach the issue of whether Adams can partially withdraw or modify the plea agreement.

As previously stated, a no contest plea made knowingly and voluntarily precludes a defendant from later asserting any nonjurisdictional claims on appeal. *Morin,* 71 Haw. at 162, 785 P.2d at 1318. Inasmuch as Adams entered his no contest plea knowingly and voluntarily, we hold that he effectively waived the statute of limitations for Counts III, IV, V, and VI upon entry of his plea. *See also Acevedo–Ramos v. United States,* 961 F.2d 305, 307–09 (1st Cir.1992) (statute of limitations is a waivable affirmative defense and does not affect a court's jurisdiction; "like other affirmative defenses, the statute of limitations is deemed waived when a defendant pleads guilty even if the defendant did not make a knowing and express waiver of the defense"); *State v. Johnson,* 422 N.W.2d 14, 16 (Minn.Ct.App.1988) ("[a] guilty plea by a counseled defendant operates as a waiver of all nonjurisdictional defects arising prior to the entry of the plea"; inasmuch as statute of limitations is not jurisdictional, defendant waived right to appeal statute of limitations issue); *Longhibler v. State,* 832 S.W.2d 908, 911 (Mo.1992) ("[T]he statute of limitations is non-jurisdictional and can be waived. A voluntary plea of guilty waives all non-jurisdictional defects in the proceedings."); *State v. Brown,* 43 Ohio App.3d 39, 539 N.E.2d 1159, 1163–64 (1988) (statute of limitations is not jurisdictional and can be voluntarily waived; claim of error based on statute of limitations was waived by defendant's guilty plea); *James v. Galetka,* 965 P.2d 567, 573 (Utah Ct.App.1998) ("[C]riminal statute of limitations are not jurisdictional, but are a bar to prosecution which can be waived by a knowing and voluntary guilty plea.... [D]efendant's guilty plea ... was sufficient for defendant to waive the statute of limitations bar to obtain the benefit of the plea bargain."); *cf. United States v. Broce,* 488 U.S. 563, 573, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relin-

---

4. Pursuant to HRPP Rule 11(c) (1993):

(c) *Advice to Defendant.* The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:
(1) the nature of the charge to which the plea is offered; and
(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and
(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and
(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

5. As stated in the circuit court's FOF 6, which Adams does not dispute: "[Adams] does not seek to vacate the entire judgment, but only the judgment as to Counts III, IV, V, and VI[.]"

quished by a plea of guilty. Waiver in that sense is not required."). As stated in *Timoteo*, "[n]o express waiver through an on-the-record colloquy was necessary." *Timoteo*, 87 Hawai'i at 116, 952 P.2d at 873.

## C. *Ineffective Assistance of Counsel*

■ Adams asserts that he was denied the effective assistance of trial counsel, stating:

> Former trial counsel's failure to inform [Adams] of a potentially meritorious defense, namely the applicable statute of limitation to four (4) Class C felony counts [(Counts III, IV, V, and VI)] resulted in the withdrawal or substantial impairment of a meritorious defense. Former trial counsel failed to afford [Adams] effective assistance of counsel.

We disagree.

This court has stated that:

> General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting defendant's case and it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then the knowledge held and investigation performed by counsel in pursuit of an informed decision will be evaluated as that information that, in light of the complexity of the law and the factual circumstances, an ordinarily competent criminal attorney should have had. An informed, tactical decision will rarely be second-guessed by judicial hindsight. If the record is unclear or void as to the basis for counsel's actions, counsel shall be given the opportunity to explain his or her actions in an appropriate proceeding before the trial court judge.

*Briones v. State*, 74 Haw. 442, 462–63, 848 P.2d 966, 976–77 (1993) (emphasis in original) (internal citations and some emphases omitted).

Adams essentially argues that had trial counsel advised him of the statute of limitations defense regarding Counts III, IV, V, and VI, he would not have pled no contest to those counts and was, therefore, deprived of the meritorious defense of the statute of limitations. However, trial counsel's alleged failure to advise Adams and assert the statute of limitations defense nonetheless had an obvious tactical basis for benefitting Adams's case—a favorable plea agreement with the prosecution. As the prosecution points out, pursuant to HRS § 706–659 (Supp.1997), the maximum possible term of imprisonment for a person convicted of a class A felony is "an indeterminate term of imprisonment of twenty years without the possibility of suspension of sentence or parole." Pursuant to HRS § 706–640 (Supp.1997), the maximum possible fine that can be imposed upon a person convicted of a class A felony is a fine not exceeding $50,000. In addition, the maximum possible length of imprisonment for a class C felony is five years, HRS § 706–660 (1993), with a maximum possible fine not exceeding $10,000, HRS § 706–640(1)(c). Therefore, Adams's maximum possible sentence and fine for Counts I and II alone totaled twenty-five years (twenty without the possibility of suspension or parole) and an amount not exceeding $60,000.

Based on the record, there is no question that Adams benefitted from the plea bargain negotiated by trial counsel. Trial counsel obtained a dismissal with prejudice of Count I, a reduced charge in Count II from a class A to a class B felony, and concurrent sentencing as to Counts II, III, IV, V, and VI.[6] Therefore, with respect to Count II alone, trial counsel obtained a reduction of Adams's maximum possible term of imprisonment from twenty to ten years, *see* HRS §§ 706–

6. As previously stated, pursuant to the plea agreement, Adams entered a plea of no contest to the reduced charged of second degree sexual assault, a class B felony, in Count II and no contest to four counts of third degree sexual assault in Counts III, IV, V, and VI. In turn, the prosecution recommended concurrent sentencing and moved to nolle prosequi with prejudice the remaining charge of third degree sexual assault in Count I. As also previously indicated, Adams was sentenced to a ten-year term of imprisonment for Count II and five-year terms of imprisonment each for Counts III, IV, V, and VI, with all terms to run concurrently.

659 (Supp.1994) & 706–660, and a reduction of his maximum possible fine from $50,000 to $25,000, *see* HRS § 706–640.[7]

Further, as previously noted, Adams chose not to question trial counsel, De Lima,[8] at his Rule 40 petition hearing, but, rather, agreed to stipulate to De Lima's testimony as follows:

> THE COURT:.... [I]s there going to be any evidence by way of testimony?
>
> [Defense Counsel]: Other than the stipulated testimony of Mr. De Lima, I don't believe there will be any testimony. Everything will be submitted via memo. So the answer is no.
>
> THE COURT: From your perspective. Okay. [Prosecutor]?
>
> [Prosecutor]: Your honor, basically I have one witness, Mr. De Lima. He would testify, if called, for a very limited area. His testimony would be that at the time of plea, in order to obtain the benefit of Count Two, which was an A felony being reduced to a B felony, the agreement was that Mr. Adams would plea to Counts Two, Three, Four, Five, and Six. And that was the offer from the State. So in order to get the benefit of that reduction on Count Two, Mr. Adams would also plead to the counts that are contested today.
>
> THE COURT: Okay. So that's the extent of the proposed stipulation?
>
> [Prosecutor]: Yes.
>
> THE COURT: [Defense counsel], will that be a stipulation that you on behalf of your client could enter into?
>
> [Defense Counsel]: That would be the stipulated testimony, Your Honor.

Based on the record before this court, Adams's contention that trial counsel rendered ineffective assistance of counsel by allegedly failing to advise him of the statute of limitations defense for Counts III, IV, V, and VI, without more, is simply not enough for Adams to meet his burden of establishing ineffective assistance of counsel. Accordingly, we hold that, viewed as a whole, the assistance provided by trial counsel was with-

in the range of competence demanded of attorneys in criminal cases. *State v. Antone,* 62 Haw. 346, 348, 615 P.2d 101, 104 (1980).

## IV. *CONCLUSION*

For the foregoing reasons, we affirm the circuit court's November 19, 2001 findings of fact, conclusions of law and order denying Adams's Rule 40 petition.

---

7. We note that the family court did not impose any fine upon Adams as a part of his sentencing.

8. As previously indicated, the prosecution, and not Adams, called De Lima to testify as a potential witness at Adams's Rule 40 petition hearing.