**Electronically Filed
Supreme Court
SCWC-10-0000199
19-NOV-2015
09:07 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SANDRA KAY SCHWARTZ,
Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAI'I,
Respondent/Respondent-Appellee.

SCWC-10-0000199

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000199; DC-S.P. NO. 10-1-0005; CASE NO. 2DTA-08-00292)

November 19, 2015

McKENNA AND POLLACK, JJ., AND CIRCUIT JUDGE KIM, ASSIGNED BY
REASON OF VACANCY; WITH NAKAYAMA, J., CONCURRING SEPARATELY,
WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

## I.    INTRODUCTION

Sandra Schwartz applied for a writ of certiorari from
the judgment on appeal of the Intermediate Court of Appeals to
determine whether omission of an element of a charged offense
renders the trial court without subject-matter jurisdiction over

the case.  We find no deficiency of jurisdiction and affirm the judgment on appeal, but for the reasons stated herein.

## II.    BACKGROUND

On February 20, 2008, the State of Hawai'i (State) filed a two-count criminal traffic complaint against Sandra Schwartz (Schwartz) in the District Court of the Second Circuit (district court).  Count One alleged commission of the offense of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawai'i Revised Statutes (HRS) § 291E-61(a) (2007).[1]  The complaint charged Count One as follows:

> That on or about the 26th day of January, 2008, in the Division of Lahaina, County of Maui, State of Hawaii, SANDRA KAY SCHWARTZ did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that she was under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant in violation of Section 291E61 (a) of the Hawaii Revised Statutes.

The complaint did not allege that the offense took place on a public way, street, road, or highway.[2]

---

[1]    HRS § 291E-61(a) provides, in relevant part as follows:

(a)    A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty . . . .

[2]    Count Two alleged Reckless Driving of Vehicle in violation of HRS § 291-2 (2007).  The charge read as follows:

(continued . . .)

On April 2, 2008, Schwartz pleaded guilty to the OVUII charge.[3] At the change of plea hearing, counsel for Schwartz stated, "Your Honor, we are in receipt of a written complaint. We waive oral reading of the written complaint." The court examined Schwartz with respect to her plea, and Schwartz indicated that she was aware of the procedural and substantive effect of her plea. Schwartz and the State stipulated to the following facts: Schwartz was stopped by a police officer in Lāhainā; she was unable to successfully perform field sobriety maneuvers; and she elected to refuse testing. Following recitation of these facts and completion of the guilty plea colloquy, the district court found Schwartz guilty of OVUII and imposed sentence.[4] Schwartz did not file an appeal from the April 2, 2008 judgment of conviction (judgment).

_____

(. . . continued)
> That on or about the 26th day of January, 2008, in the Division of Lahaina, County of Maui, State of Hawaii, SANDRA KAY SCHWARTZ did operate a motor vehicle recklessly in disregard of the safety of persons or property, thereby committing the offense of Reckless Driving of Vehicle in violation of Section 291-2 of the Hawaii Revised Statutes.

Court minutes reflect that Count Two was amended to "Lack of Due Care," in violation of Maui County Code § 10.52.010.

[3] The Honorable Rhonda I. L. Loo presided.

[4] The district court also accepted Schwartz's "admittance" to the Lack of Due Care charge.

The district court imposed the following sentence: Count One-- $300 fine, $30 criminal injury fee, $100 driver's education fee, $7 driver education fee, $25 neurotrauma fee, $250 drug demand reduction fee, and 90-day license suspension; Count Two--$100 fine, and $7 driver's education fee.

Approximately two years later, this court held that operation of a vehicle on "a public way, street, road, or highway" (public road) is an attendant circumstance of the offense of OVUII, and therefore the public road circumstance is an element of the offense that must be stated in the charge. State v. Wheeler, 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009).

Based on Wheeler, Schwartz filed a petition to vacate and set aside the judgment under Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (Rule 40 petition). In her Rule 40 petition, Schwartz raised a single issue: the "complaint failed to allege an essential element of OVUII," and "[a]ccordingly, [c]ount [o]ne of the complaint . . . was fatally defective, thereby conferring no subject matter[] jurisdiction to the trial court." (Emphasis added). Schwartz argued that as a consequence of the court's lack of jurisdiction, the judgment as to the OVUII charge "is null and void as a matter of law." Schwartz did not contend that her plea was not made voluntarily and intelligently nor assert any other reason that her plea should be considered invalid.

The State responded with the following arguments: Schwartz waived her jurisdictional argument by failing to raise it on direct appeal; even if she had not waived the argument, Wheeler does not apply retroactively to final judgments no

longer pending at the time Wheeler was decided; the complaint reasonably charged Schwartz with OVUII; and she was not prejudiced by the omission of the public-road element in the OVUII charge.

In its written order denying the Rule 40 petition, the district court concluded that Wheeler "created a new constitutional rule of criminal procedure."[5]  The court noted that new constitutional rules of criminal procedure do not apply to cases that become final before the new rule is announced, unless the rule is within one of two categories.  The court concluded that the two exceptions did not apply because it was not (1) a rule that places a class of private conduct beyond the power of the State to proscribe or addresses a substantive categorical guarantee of the constitution or (2) a watershed rule of criminal procedure implicating fundamental fairness. Accordingly, the district court concluded that Wheeler did not apply retroactively and denied Schwartz's Rule 40 petition.

Schwartz timely appealed to the Intermediate Court of Appeals (ICA).  Before the ICA, Schwartz renewed her argument that the district court lacked jurisdiction to adjudicate the crime for which she was charged and also challenged the district

---

[5]    The Honorable Kelsey T. Kawano presided.

court's conclusion that Wheeler could not be applied retroactively to challenge a final judgment.

In response, the State argued the following: the district court correctly found that Wheeler did not have retroactive application; under the Motta/Wells liberal construction standard,[6] the complaint could reasonably be construed to charge a crime; and Schwartz could not show that she suffered prejudice.

The ICA affirmed the district court's order denying Schwartz's Rule 40 petition in a summary disposition order, relying on Christian v. State, 131 Hawai'i 153, 315 P.3d 779 (App. 2013), decided the same day. Schwartz v. State, No. CAAP-10-0000199 (App. Nov. 23, 2013) (SDO) at *1. In Christian, the ICA held that the Wheeler decision represented a new rule that did not apply retroactively. Christian, 131 Hawai'i at 160-61, 315 P.3d at 786-87. Additionally, the ICA concluded that when a defendant challenges the sufficiency of the charge for the first time on collateral review, a defendant is required to show exceptional circumstances in order to obtain relief. Id. at 164—65, 315 P.3d at 788—90. Applying that test, the ICA held that Schwartz could not establish exceptional circumstances. Id. at 164-65, 315 P.3d at 790-91.

---

[6]    See State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983); State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995).

In her application for writ of certiorari (Application) to this court, Schwartz presents the threshold question of whether the failure of a charging instrument to allege an element of an offense is a jurisdictional defect that "fail[s] to confer subject-matter jurisdiction to the district court."  Schwartz also presents two other questions: whether Wheeler applies retroactively to cases on collateral review, and whether "a defective charge under Wheeler, even if properly characterized as a jurisdictional defect, cannot be retroactively applied on collateral review."

### III.      STANDARD OF REVIEW

The denial of a Rule 40 petition based on the district court's conclusions of law is reviewed de novo.  Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007).

### IV.      DISCUSSION

In 2009, this court held that the fact that the offense of OVUII took place on a public road was an element of an OVUII charge.  Wheeler, 121 Hawai'i at 393, 396, 219 P.3d at 1180, 1183.  As noted, the OVUII charge against Schwartz, filed prior to the decision in Wheeler, did not allege the public-road element.  Thus, this court must determine whether the district court had jurisdiction to adjudicate the OVUII offense charged against her, notwithstanding the omitted element.

## A.     Jurisdiction of the district court is conferred by statute

Jurisdiction is defined as "the power and authority on the part of the court to hear and judicially determine and dispose of the cause pending before it."  State v. Villados, 55 Haw. 394, 396, 520 P.2d 427, 430 (1974); Matter of Keamo, 3 Haw. App. 360, 366, 650 P.2d 1365, 1370 (1982) (same); Sherman v. Sawyer, 63 Haw. 55, 57, 621 P.2d 346, 348 (1980) (same); see also Black's Law Dictionary 980 (10th ed. 2014) (defining jurisdiction as a "court's power to decide a case or issue a decree").

"Jurisdiction of the offense charged and of the person of the accused is a fundamental and indispensable prerequisite to a valid prosecution."[7]  State v. Meyers, 72 Haw. 591, 593, 825 P.2d 1062, 1064 (1992).  "[J]urisdiction depends upon the state of affairs existing at the time it is invoked; once having attached, it . . . is retained by a court until fully exhausted by the entry of a final judgment."  Villados, 55 Haw. at 397, 520 P.2d at 430.  It is not lost by subsequent events, id.,

---

[7]     Jurisdiction over the person of the accused exists, inter alia, when the person's conduct or the conduct of another for which the person is legally accountable occurs within this State or the result constituting an element of the offense occurs within this State.  HRS § 701-106(1)(a); see also HRS § 701-106(1)(b)-(f).  Schwartz has not argued that personal jurisdiction was lacking in this case.

unless a statute provides otherwise.[8]  "[J]urisdiction is not a light bulb which can be turned off or on during the course of the trial."  Id. (quoting Silver Surprize, Inc. v. Sunshine Mining Co., 445 P.2d 334, 336 (Wash. 1968)) (internal quotation marks omitted).

Lack of subject-matter jurisdiction means that a court is without power to decide the merits of a case.[9]  State v. Brandimart, 68 Haw. 495, 496, 720 P.2d 1009, 1010 (1986).  However, "[a] court always has jurisdiction to determine whether it has jurisdiction over a particular case."  Id.  "[Q]uestions regarding subject matter jurisdiction may be raised at any stage of a cause of action."  Adams v. State, 103 Hawai'i 214, 221, 81 P.3d 394, 401 (2003) (quoting Amantiad v. Odum, 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999)).  If a court lacks jurisdiction to hear a matter, any decision on the merits of the "case" is, by definition, null and void.  Id.

Thus, subject-matter jurisdiction is fundamental to a court's power to act on the merits of a case from the outset of

---

[8]    See, e.g., HRS § 583A-202 (2002) (describing the exclusive, continuing jurisdiction of a court over a child-custody determination until two alternative events transpire).

[9]    "Subject-matter jurisdiction" is used in this opinion when generally referring to "the power and authority on the part of the court to hear and judicially determine and dispose of the cause pending before it." State v. Villados, 55 Haw. 394, 396, 520 P.2d 427, 430 (1974).  "Criminal jurisdiction" is used when referring to the subject-matter jurisdiction of the district courts over criminal cases, as defined by Hawai'i Revised Statutes (HRS) chapter 604.

the action; it may be challenged at any time, but jurisdiction does not vacillate during the course of a case depending on the particulars of the matter as it develops.

## 1.  Criminal jurisdiction of the district courts

The criminal jurisdiction of our courts originates in our constitution and is defined by the legislature.

> The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish.  The several courts shall have original and appellate jurisdiction as provided by law . . . .

Haw. Const. art. VI, § 1 (emphasis added).  In accordance with the constitution, the legislature has established the criminal jurisdictional parameters of the circuit courts and the district courts by statute.  See HRS § 603-21.5 (prescribing the jurisdiction of the circuit courts as including "[c]riminal offenses cognizable under the law of the State, committed within their respective circuits"); HRS § 604-8 (setting forth the narrower criminal jurisdiction of the district courts).[10]

HRS chapter 604 defines the criminal jurisdiction of the district courts.[11]  "District courts shall have jurisdiction

---

[10]     "An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime."  HRS § 701-107.

[11]     See also Haw. Const. art. I, § 14 ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." (emphasis added)).

of, and their criminal jurisdiction is limited to, criminal offenses punishable by fine, or by imprisonment not exceeding one year whether with or without fine."  HRS § 604-8 (2001). District courts are empowered "to try without a jury, and to render judgment in all cases of criminal offenses coming within their respective jurisdictions."  HRS § 604-9.[12]  Additionally, the district courts are conferred authority to adjudicate violation of ordinances enacted by the counties.[13]

In addition to defining district court criminal jurisdiction by the penalties that may be imposed for the offense, the legislature specifies that the district courts have jurisdiction of all criminal offenses "cognizable" under state law that occur within their respective circuits, subject to the penalties limitations set forth in HRS § 604-8: "The several district courts shall have jurisdiction, except as otherwise provided, of all criminal offenses cognizable under the laws of the State, committed within their respective circuits or transferred to them for trial by change of venue from some other district court."  HRS § 604-11.5 (1993) (emphasis added); see

---

[12]    The district court's criminal jurisdiction over a case terminates when a defendant exercises a right to jury trial.  HRS § 604-8(a); see infra note 15.

[13]    "Jurisdiction is conferred upon the district courts to try all cases arising from the violation of ordinances in force in the counties and to impose the penalties in such ordinances prescribed for such offenses in like manner as their original jurisdiction is exercised under the general law."  HRS § 604-11 (1993).

also HRS § 603-21.5 (providing that the circuit courts have jurisdiction of criminal offenses "cognizable under the laws of the State" (emphasis added)).

Cognizable means "[c]apable of being known or recognized," or "[c]apable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction." Black's Law Dictionary 316 (10th ed. 2014). "A court has subject matter jurisdiction over a case if it is authorized to take cognizance of, try, and determine a case involving that subject matter." State v. Alagao, 77 Hawai'i 260, 262, 883 P.2d 682, 684 (App. 1994) (citing Coleman v. Coleman, 5 Haw. 300 (Haw. Kingdom 1885)).[14]

Therefore, the criminal jurisdiction of the district courts is defined and limited by grant of the legislature. As defined by HRS Chapter 604, the jurisdiction of the district

---

[14]    "Cognizable" has been applied by the United States Supreme Court in addressing a court's jurisdiction. In Lamar v. United States, 240 U.S. 60 (1916), Justice Holmes stated that "nothing can be clearer than that the district court, which has jurisdiction of all crimes cognizable under the authority of the United States . . . , acts equally within its jurisdiction." 240 U.S. at 64-65 (emphases added). Similarly, in United States v. Williams, 341 U.S. 58 (1951), the Court used the concept of cognizable to distinguish between cases where subject-matter jurisdiction existed versus where it did not. Where jurisdiction was lacking, the Court found that "[t]he kind of judicial controversies presented for adjudication . . . were [sic] not cognizable by the respective courts." 341 U.S. at 67. In the case before it, however, the Court ruled that the district court had jurisdiction because federal statutes independently prohibited the conduct at issue: "We have a court empowered to take cognizance of the crime . . . and decide the issues under that statute." Id. at 68. Under Lamar and Williams, jurisdiction is the power granted by law to adjudicate crimes defined by other law; such crimes are said to be "cognizable" by the adjudicating entity.

courts encompasses crimes established by law that are punishable by fine or by fine and imprisonment of not more than a year, and that occur within the court's respective circuit or that are properly transferred by a change of venue. If the requirements of HRS Chapter 604 are satisfied, jurisdiction of the district court is invoked by the charging instrument.

### 2. The OVUII charge invoked the jurisdiction of the district court

The complaint charged Schwartz with OVUII under HRS § 291E-61(a).[15] Count One of the complaint stated as follows:

> That on or about the 26th day of January, 2008, in the Division of Lahaina, County of Maui, State of Hawaii, SANDRA KAY SCHWARTZ did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that she was under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant in violation of Section 291E-61 (a) of the Hawaii Revised Statutes.

The charge indicated the location and date of the offense, the defendant, and the statute that Schwartz allegedly violated. The charged OVUII offense is "known" and recognized as a crime under HRS § 291E-61; the offense was punishable by a

---

[15] At the time of Schwartz's offense, HRS § 291E-61 provided the following as a sentence for a first offense: fourteen hours of a "substance abuse rehabilitation program," a 90-day suspension of license, and a $25 neurotrauma special fund surcharge. HRS § 291E-61 (2007). In addition, the court could impose one or more of the following: 72 hours of community service, "not less than forty-eight hours and not more than five days of imprisonment," and a "fine of not less than $150 but not more than $1,000." Id. Based on the maximum potential sentence, Schwartz did not have the right to a jury trial. See State v. Nakata, 76 Hawai'i 360, 367, 878 P.2d 699, 706 (1994).

fine and by imprisonment not exceeding one year; and the offense was alleged to have occurred in Lāhainā, which is within the Second Circuit. The required components of HRS §§ 604-8 and 604-11.5 were thus met. Consequently, the district court had subject-matter jurisdiction over the January 26, 2008 OVUII charge; that is, the district court had the power to hear and judicially dispose of the OVUII charge brought against Schwartz.

Count One also set forth the elements of the crime as defined by HRS § 291E-61(a)(1), but it did not state that the offense took place on a public road. Thus, the charge failed to allege an element of the crime of OVUII as established by HRS § 291E-61(a)(1).

### 3. Failure to charge an element does not deprive a court of subject-matter jurisdiction

This court has implicitly rejected the proposition that a charging instrument that fails to allege an element or the requisite mens rea of an otherwise cognizable crime renders the trial court without criminal jurisdiction. In State v. Davis, 133 Hawai'i 102, 324 P.3d 912 (2014), we considered whether an appellate court must address a defendant's express claim of insufficiency of evidence prior to remanding a case for dismissal because of a defective charge. Id. at 118, 324 P.3d at 928. The defendant in that case appealed his conviction following trial, contending, inter alia, that (1) the charge was

defective because the State failed to allege a culpable state of mind as required and (2) there was insufficient evidence to support the conviction. Id. at 110, 324 P.3d at 920. The ICA agreed that the charge was defective and accordingly remanded the case to the district court to dismiss the case without prejudice; however, the ICA did not consider the sufficiency of the evidence. Id. The defendant sought review in this court of the ICA's failure to consider the sufficiency of the evidence, arguing that double jeopardy barred retrial if the evidence adduced at trial was insufficient to sustain the conviction. Id.

We held that an appellate court is required to address a defendant's expressed claim of insufficiency of the evidence before remanding a case for dismissal based on a defective charge. Id. at 120, 324 P.3d at 930. The holding in Davis treated a charge that is deficient for failing to allege a state of mind the same as one that fails to allege an element: "A defective or faulty indictment or charge," whether based on a failure to allege the mens rea or based upon the omission of an element, is a "trial error." Id. at 116 n.14, 324 P.3d at 926 n.14 (internal quotation marks omitted). The Davis court noted, "It is well-settled that, even where this court finds trial error, challenges to the sufficiency of the evidence must always be decided on appeal." Id. at 116, 324 P.3d at 926 (emphasis

altered) (quoting State v. Kalaola, 124 Hawai'i 43, 59, 237 P.3d 1109, 1125 (2010)) (internal quotation marks omitted). Therefore, Davis's treatment of trial error in relation to a flawed charge did not depend upon the nature of the charging defect.

The primary holding of Davis--that the appellate court must consider the sufficiency of the evidence when it is raised on appeal prior to remanding a case for dismissal as a result of a defective charge--is incompatible with treating a defective charge as depriving the court of the power to hear the case.

> It is axiomatic that if a lower court is found to have lacked jurisdiction, we have jurisdiction on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction. If an insufficient charge constituted a jurisdictional defect, then this court could not evaluate whether sufficient evidence existed before the trial court inasmuch as it would not have jurisdiction over the merits of the case.

Id. at 123 n.2, 324 P.3d 933 n.2 (Acoba, J., concurring) (alteration omitted) (emphasis added and omitted) (quoting In re Rice, 68 Haw. 334, 713 P.2d 426 (1986)) (internal quotation marks omitted). Therefore, Davis is irreconcilable with a rule that a court is deprived of subject-matter jurisdiction by a charging instrument that fails to allege a culpable state of mind or an element of the crime charged. If the court's jurisdiction had been abrogated by the defective charge, the trial proceedings would be void and the appellate court would be

unable to consider whether the evidence was sufficient to support a conviction.

### 4. Prior decisions are generally consistent with Davis

This court's prior decisions are generally consistent with a rule that a charging instrument that fails to allege either the mens rea or an element of a crime, while potentially a significant violation of the defendant's right to due process, does not deprive the court of its power to adjudicate a crime over which the legislature has granted the court jurisdiction.

In State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), this court characterized an insufficient charge as a "failure to state an offense" and characterized a conviction based on such a charge as a "denial of due process." Id. at 281, 567 P.2d at 1244. "Not only does [the complaint] fail to state an offense, but it also fails to meet the requirement that an accused must be informed of the 'nature and cause of the accusation' against him." Id. (quoting Territory v. Yoshimura, 35 Haw. 324, 327 (Haw. Terr. 1940)). Despite finding the charge "fatally defective," id., Jendrusch does not describe the defective charge as precluding the subject-matter jurisdiction of the court. Rather, the principal error recognized by Jendrusch was that the complaint failed to state the requisite intent and an element of conduct of the offense charged. Id. at 281-82, 567 P.2d at 1244-45 (noting that the complaint failed to

allege the prescribed intent and that the relevant speech was likely to provoke a violent response).  Therefore, Jendrusch addressed the defendant's lack of notice of the nature and cause of the charge against him and not the power of the court to hear the case.

In State v. Elliott, 77 Hawai'i 309, 884 P.2d 372 (1994), this court also did not use the term "jurisdiction" regarding a deficient charging instrument.  The State failed to allege that the defendant intentionally prevented a police officer from effectuating an arrest with respect to a resisting arrest charge.  Also, in regard to an assault against a police officer charge, the State did not allege that the assault was against a police officer in the line of duty.  Id. at 311, 884 P.2d at 374.

Citing Jendrusch, Elliott states that "the failure to allege an essential element of an offense ma[kes] a charge 'fatally defective,'" id., and "constitute[s] a denial of due process,." id. (quoting Jendrusch, 58 Haw. at 281, 567 P.2d at 1244.  Elliott then examined the charge to determine if it could reasonably be construed to allege an included crime.  Id. at 312, 884 P.2d at 375.  The court concluded that the assault against a police officer charge could be construed to charge assault in the third degree but that the resisting arrest charge

could not be construed to charge an included offense.  Id. at 313, 884 P.2d at 376.

Accordingly, the case was remanded for entry of conviction of assault in the third degree and for dismissal of the resisting arrest charge.  Id.  If the defective charge had deprived the trial court of its power to adjudicate the assault offense, there would have been no basis on which this court could direct the trial court to enter conviction for the lesser included offense--the conviction for assault against a police officer would simply have been a nullity and the court would have vacated the judgment and remanded the case for dismissal. Therefore, as Elliott addressed the merits of the assault charge and examined relevant facts of the case, it is consistent with the rule that a charge, defective for failure to allege an element of an offense or a requisite mens rea, does not deprive the court of subject-matter jurisdiction conferred by statute.

In State v. Israel, 78 Hawai'i 66, 890 P.2d 203 (1994), the State appealed the circuit court's dismissal of a charge of the use of a firearm in the commission of a felony.  The defendant had successfully moved to have the charge dismissed for failure to allege the underlying felony.  Id. at 69, 890 P.2d at 306.  The court held that the failure of the State to allege the predicate felony resulted in a failure to adequately inform the defendant of the nature and cause of the crime

charged, in violation of article I, section 14 of the Hawai'i Constitution. Id. at 71, 890 P.2d at 308. The Israel court concluded that "the principle of fundamental fairness, essential to the concept of due process of law, dictates that the defendant in a criminal action should not be relegated to a position from which he or she must speculate as to what crime he or she will have to meet in defense." Id. (alterations omitted) (quoting Kreck v. Spalding, 721 F.2d 1229, 1233 (9th Cir.)) (internal quotation marks omitted); see also id. at 73—75, 890 P.2d at 310—12 (characterizing a defective charge as a failure of due process and citing Elliott, Jendrusch, and Territory v. Yoshimura, 35 Haw. 324, 328 (Haw. Terr. 1940)).[16] Therefore, the court affirmed the dismissal. Id. at 76, 890 P.2d at 313. Israel does not refer to jurisdiction in discussing the failure of the charging document; thus, the decision is also consistent

---

[16]   In Yoshimura, the court held that a grand jury indictment was

> sufficient if the information clearly and distinctly sets
> forth the offense charged in ordinary and concise language,
> in such manner as to enable a person of common
> understanding to know what is intended, and with such a
> degree of certainty as to enable the court to pronounce
> judgment of conviction according to the right of the case.

Yoshimura, 35 Haw. at 331 (internal quotation mark omitted). The court found that one charge was legally insufficient for "merely" using "the language of the statute and [fell] short of apprising the defendant of the nature and cause of the accusation against him as required by the sixth amendment to the Constitution of the United States." Id. at 327-28. The court found that another charge was not defective and accordingly reinstated the indictment against the defendant but only on the sufficient charge. Id. at 332. The decision does not suggest any impairment of jurisdiction.

with the rule that a charging instrument that fails to allege an element of the crime charged does not deprive a court of its subject-matter jurisdiction.

In State v Sprattling, 99 Hawai'i 312, 317, 55 P.3d 276, 282 (2002), the defendant was orally charged with assault in the third degree, but the State failed to allege "bodily injury," alleging only "injury" instead. Id. at 317, 55 P.3d at 281. Sprattling describes a defective charge as "encroach[ing] upon a defendant's constitutional rights," but not as encroaching upon the power of the court to adjudicate the crime charged. Id. at 318, 55 P.3d at 282. "The onus is on the prosecution to inform the accused fully of the accusations presented against him or her because [of] 'the principle of fundamental fairness[] essential to the concept of due process of law . . . .'" Id. (alteration omitted) (quoting Israel, 78 Hawai'i at 71, 890 P.2d at 308). The majority in Sprattling did not use the term "jurisdiction" in reference to the alleged defect of the charge.[17] This decision is therefore also consistent with the rule that a charge that omits an element of an offense is a trial error but not one that vitiates the jurisdiction of the court granted by statute.

---

[17]    But see Sprattling, 99 Hawai'i at 327, 55 P.3d at 291 (Levinson, J., dissenting).

In State v. Nesmith, 127 Hawai'i 48, 276 P.3d 617 (2012), this court again reviewed the sufficiency of a charge and did not describe an insufficient charge in terms of jurisdiction. Id. at 52, 276 P.3d at 621. The defendants in Nesmith were charged with OVUII under HRS § 291E-61(a)(1) and (a)(3), but challenged their convictions on the grounds that the charge in their respective cases failed to allege the mens rea. This court determined that under HRS § 291E-61(a)(1), the "sufficient to impair" alternative of the offense,[18] the State was required to prove a culpable state of mind that must be alleged in the complaint. Id. However, under HRS § 291E-61(a)(3), the court determined that the alternative of "with .08 or more grams of alcohol" per two hundred ten liters of breath was a strict liability offense that did not require the State to prove a culpable state of mind. Id. at 53, 276 P.3d at 622. Thus, as the charges relating to the HRS § 291E-61(a)(3) alternative did not require the State to allege the mens rea, the decision in Nesmith upheld the convictions of both

---

[18]     HRS § 291E-61(a) contains four subsections delineating forms of conduct or circumstances that comprise the offense of OVUII: (1) while under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; (2) while under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner; (3) with .08 or more grams of alcohol per two hundred ten liters of breath; or (4) with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood. HRS § 291E-61(a). Conviction of the single offense of OVUII under HRS § 291E-61(a) can be based on any, or any combination, of the subsections. Nesmith, 127 Hawai'i at 50 n.5, 276 P.3d at 619 n.5.

defendants, but the court also concluded that the respective charges failed to allege the requisite state of mind for the "sufficient to impair" alternative under HRS § 291E-61(a)(1). Id. at 61, 276 P.3d at 630.

As is significant in the current context, Nesmith did not describe the failure to allege the mens rea as a defect that deprived the court of its subject-matter jurisdiction. Instead, the decision describes the defect as "a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." Id. at 53, 276 P.3d at 622. Thus, Nesmith is consistent with the rule that a charge that fails to allege the requisite mens rea does not deprive the court of subject-matter jurisdiction.

Similarly, in State v. Apollonio, 130 Hawai'i 353, 358, 311 P.3d 676, 681 (2013), this court considered the sufficiency of an excessive speeding charge that failed to allege a culpable state of mind. Apollonio described the insufficient charge not as a defect that deprives a court of its subject-matter jurisdiction, but as a denial of due process. "[W]e adhere to this core principle: A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it

violates due process."[19]  Id. at 359, 311 P.3d at 682 (citing

Elliott, 77 Hawai'i at 313, 884 P.2d at 376; Nesmith, 127 Hawai'i

at 56, 276 P.3d at 625).  Therefore, Apollonio is also

consistent with the rule that a charge that fails to allege the

mens rea or an element of a crime is a due process violation,

but such omission does not eliminate a court's jurisdiction

established by statute over a cognizable criminal offense.

While the majority of our cases have not treated a

charge that omits an element or the requisite mens rea as a

defect that eliminates a court's subject-matter jurisdiction,

two cases have characterized such defects as jurisdictional

flaws.  These cases state that the defective charge is a

violation of due process and deprives the court of

"jurisdiction."  However, both cases appear not to have fully

applied a subject-matter jurisdiction analysis as reflected in

the disposition or other rulings rendered in those cases.  See

Adams, 103 Hawai'i at 220-21, 81 P.3d at 400-01 ("[J]urisdiction

---

[19]     The majority held that the insufficiency of the charge required that it be dismissed without prejudice.  Id. at 358, 311 P.3d at 681.  The majority opinion did not undertake an analysis of the jurisdiction of the trial court.  The minority, however, analyzed the defendant's argument that the insufficient charge deprived the court of jurisdiction and concluded that "an insufficient charge does not constitute a jurisdictional defect." Apollonio, 130 Hawai'i at 368, 311 P.3d at 691 (Recktenwald, C.J., concurring and dissenting).

        The minority would have found no error on the insufficient charge issue, but concurred in the result that remanded the case for a new trial based on other grounds reached by the majority.  Id. at 364, 311 P.3d at 687 (Recktenwald, C.J., concurring and dissenting).

of the offense charged and of the person of the accused is a fundamental and indispensable prerequisite to a valid prosecution."  (citing State v. Meyers, 72 Haw. 591, 593, 825 P.2d 1062, 1064 (1992))).

In State v. Cummings, 101 Hawai'i 139, 63 P.3d 1109 (2003), a defendant charged with OVUII argued "that the complaint failed to allege he was under the influence of intoxicating liquor 'in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty.'"  101 Hawai'i at 142, 63 P.3d at 1112 (emphasis deleted) (quoting HRS § 291-4(a)(1) (Supp. 1999)).  The Cummings court agreed that the complaint was "fatally defective" and stated that "the district court lacked subject matter jurisdiction to preside over the prosecution's DUI case against [the defendant]."  Id. at 145, 63 P.3d at 1115. Therefore, Cummings concluded that the prosecution's case-in-chief "was a nullity."  Id.

The disposition in Cummings, however, indicates that the case was decided on its merits.  In regard to the defective charge, the Cummings court reversed the conviction and sentence. Id. at 141, 63 P.3d at 1111; see also id. at 145, 63 P.3d at 1116.  To "reverse" is defined as "end[ing] the litigation on the merits."  Hawai'i Rules of Appellate Procedure Rule 35(e) (2010) (emphasis added).  In order for the disposition in

- 25 -

Cummings to be consistent with a theory that a charge failing to allege an element of the offense deprives the court of jurisdiction, the charge should have been dismissed or the case remanded to the lower court for dismissal.[20]

In State v. Walker, 126 Hawaiʻi 475, 273 P.3d 1161 (2012), the court examined the conviction of the defendant for habitually operating a vehicle under the influence of an intoxicant (habitual offense). Id. at 478, 273 P.3d at 1164. The State failed to allege an element of the crime, namely, that the defendant was convicted of OVUII three or more times within ten years. Id. at 486, 273 P.3d at 1172. Walker states that "a charge must sufficiently allege an offense in order to properly confer jurisdiction upon the presiding court." Id. at 489, 273 P.3d at 1175). The Walker decision concluded that the lack of subject-matter jurisdiction was fatal to the original charge. Id. at 492 n.26, 273 P.3d at 1178 n.26.

---

[20] Cummings cited to Territory v. Gora, 37 Haw. 1 (Haw. Terr. 1944), as support for its conclusion that a charge that does not state all the essential elements of an offense contains a jurisdictional defect. Cummings, 101 Hawaiʻi at 142, 63 P.3d at 1112. However, a contrasting analysis is also evident in Gora, in which the court characterized the failure to state an offense in a charge as a "jurisdictional point." 37 Haw. at 6. The court concluded that the defendant did not argue that the charge did not state an offense and cited no authorities that would have supported such a contention. Id. Consequently, the Gora court concluded that the defendant had abandoned the jurisdictional issue, but the court nevertheless found that the charge was sufficient. Id. As lack of jurisdiction is not subject to abandonment or waiver, Adams, 103 Hawaiʻi at 221, 81 P.3d at 401, the determination that the charge was sufficient is in conflict with a rule that a deficient indictment is a "jurisdictional point."

However, Walker also determined that lack of jurisdiction over the habitual offense could not be "cured" by remand to the lower court to enter judgment under a lesser included OVUII offense because the charge for the habitual offense failed to allege the public-road element that an OVUII charge would have required.  Id. at 492, 273 P.3d at 1178.  The analysis in Walker seemingly indicates that, while jurisdiction may be lacking for a charged offense, it might nonetheless be present for a lesser included offense.  But if jurisdiction is truly absent, the court is without authority to allow the prosecution to proceed upon a lesser included offense.

Further, the Walker opinion went on to analyze the defendant's argument that statements to a police officer and the results of a field sobriety test should have been suppressed.[21] Id. at 492, 273 P.3d at 1178.  Under the rule that every judgment on the merits in a proceeding is invalid if it is later determined that the court lacked jurisdiction, Meyers, 72 Haw. at 593, 825 P.2d at 1064, the question of whether evidence was properly admitted by the trial court was not subject to

---

[21]     Walker found that "where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, . . . errors in the admission or exclusion of evidence are deemed harmless."  Id. at 493, 273 P.3d at 1178 (alteration omitted) (quoting State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995)) (internal quotation marks omitted).

appellate review once the <u>Walker</u> court ostensibly determined that jurisdiction was lacking.[22]

As treatment of the merits of a case by a trial or appellate court is inconsistent with a lack of subject-matter jurisdiction, <u>Cummings</u> and <u>Walker</u> appear not to have fully applied a subject-matter jurisdiction analysis. In any event, our more recent decisions in <u>Davis</u>, <u>Apollonio</u>, and <u>Nesmith</u> have implicitly rejected an approach in which a charge, information, or indictment that fails to allege either the requisite mental

_____

[22] It is noted that the statement in <u>State v. Morin</u>, 71 Haw. 159, 785 P.2d 1316 (1990), that "[g]enerally, a guilty plea . . . precludes a defendant from later asserting any <u>nonjurisdictional</u> claims" but that "the defendant may still challenge the sufficiency of the indictment or other like defects bearing directly upon the government's authority to compel the defendant to answer to charges in court," 71 Haw. at 162, 785 P.2d at 1318 (emphasis added), could be construed to suggest that a charging instrument that fails to allege an element or the requisite mens rea renders the trial court without jurisdiction. However, the charging instrument in <u>Morin</u> was not deficient; it did not fail to allege an element or the requisite mens rea. Further, the authorities cited by <u>Morin</u> do not appear to assert that a charge that fails to allege an element deprives the court of jurisdiction, <u>see</u> <u>id.</u> (citing 1A Charles Alan Wright et al., <u>Fed. Prac. & Proc. Crim.</u> § 175 (1969)), or did not involve a deficient charging instrument, <u>see</u> <u>State v. Lerner</u>, 551 P.2d 553 (Ariz. 1976). Thus, <u>Morin</u> does not provide authority for the proposition that a charging instrument failing to charge an element of the offense invariably deprives the court of jurisdiction. Cases that cite <u>Morin</u>'s language regarding challenges to the sufficiency of the indictment do not discuss charging instruments that omit an element or the mens rea of an offense, <u>see</u> <u>Adams</u>, 103 Hawai'i at 224, 81 P.3d at 404 (defect in indictment alleging crimes outside the period of the statute of limitation was nonjurisdictional), or do not involve a defective indictment, <u>see</u> <u>State v. Rauch</u>, 94 Hawai'i 315, 316, 13 P.3d 324, 325 (2000) (jurisdictional issues raised on appeal unrelated to sufficiency of charging instrument); <u>State v. Dudoit</u>, 90 Hawai'i 262, 263, 978 P.2d 700, 701 (1999) (appeal of a sentence).

Accordingly, <u>Morin</u> is more appropriately construed to mean that a defendant, who has pled guilty or nolo contendere, is not barred from challenging the sufficiency of the charging instrument if the alleged defect goes to the subject-matter jurisdiction of the court. <u>See</u> <u>infra</u> note 42 for a non-exhaustive list of defects in a charging instrument that are jurisdictional in nature.

state or an element of the offense deprives a trial court of subject-matter jurisdiction.  To the extent that <u>Cummings</u> and <u>Walker</u> proceeded upon this premise, they have been superseded, and their rulings as to subject-matter jurisdiction are no longer controlling.

**B.     Under federal law, an omission of an element from a charge does not deprive the court of jurisdiction**

Recently decided federal law is consistent with the decisions of this court as reflected by <u>Jendrusch</u> and subsequent cases such as <u>Nesmith</u>, <u>Apollonio</u>, and <u>Davis</u>.

In <u>United States v. Cotton</u>, 535 U.S. 625 (2002), the United States Supreme Court rejected the contention that a charging instrument that failed to allege an element of the crime "deprive[s] a court of its power to adjudicate" a criminal case.  <u>Id.</u> at 630.  Following a jury trial, the defendants were convicted of drug charges under an indictment that did not allege sufficient quantities of contraband that would support enhanced penalties.  <u>Id.</u> at 628.  Nonetheless, the trial court applied the enhanced penalties when imposing sentence.[23]  <u>Id.</u>  On review, the court of appeals vacated the enhanced sentences due

---

[23]     The Court noted that the imposition of the enhanced sentences was in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  <u>Cotton</u>, 535 U.S at 632.  However, as the defendants in <u>Cotton</u> had neglected to object to the omission of enhancement language in the indictment during the sentencing proceeding, the Court reviewed the sentences for plain error.  <u>Id.</u>  No error was found as the Court concluded that the evidence admitted at trial overwhelmingly demonstrated a sufficient quantity of contraband to support the enhanced penalties.  <u>Id.</u>

to lack of jurisdiction: "an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional"; thus, "a court is without jurisdiction to . . . impose a sentence for an offense not charged in the indictment." Id. at 629 (emphasis omitted) (quoting United States v. Cotton, 261 F.3d 397, 404-05 (4th Cir. 2001)) (internal quotation mark omitted).

The Supreme Court reversed, expressly overruling its decision in Ex parte Bain, 121 U.S. 1 (1887), "the progenitor" of the view that a defective indictment necessarily deprives a court of jurisdiction. Cotton, 535 U.S. at 629–31. The Court found that Bain was "a product of an era" that "led to a somewhat expansive notion of 'jurisdiction,'" which was "more a fiction than anything else." Id. at 629-30 (quoting Custis v. United States, 511 U.S. 485, 494 (1994); Wainwright v. Sykes, 433 U.S. 72, 79 (1977)) (internal quotation marks omitted). The Court indicated that the nineteenth century "concept of jurisdiction is not what the term 'jurisdiction' means today, i.e., 'the courts' statutory or constitutional power to adjudicate the case.'" Id. at 630 (emphasis added and omitted).[24] "This latter concept of subject-matter jurisdiction,

_____

[24] The historical reason for the expansive view of jurisdiction was explained by the Cotton Court, which characterized Ex parte Bain as "a product of an era in which this Court's authority to review criminal convictions was greatly circumscribed." Cotton, 535 U.S at 629. It could
(continued . . .)

because it involves a court's power to hear a case, can never be forfeited or waived."  Id.

To explain the difference between a "defect" that might deprive a court of subject-matter jurisdiction and one that would not, the Cotton Court cited Lamar v. United States, 240 U.S. 60 (1916), in which the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States."  Cotton, 535 U.S. at 630 (quoting Lamar, 240 U.S. at 64) (internal quotation marks omitted).  In Lamar, Justice Holmes stated, "Jurisdiction is a matter of power, and covers wrong as well as right decisions." 240 U.S. at 64-65 (citing Fauntleroy v. Lum, 210 U.S. 230, 234 (1908); Burnet v. Desmornes y Alvarez, 226 U.S. 145, 147 (1912)).

> A decision that a patent is bad, either on the facts or on the law, is as binding as one that it is good.  And nothing can be clearer than that the district court, which has jurisdiction of all crimes cognizable under the authority of the United States, acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong. The objection that the indictment does not charge a crime against the United States goes only to the merits of the case.

---

    (. . . continued)
examine constitutional errors in a criminal trial only on a writ of habeas corpus, and only then if it deemed the error "jurisdictional."  Id. (internal quotation marks omitted).  "The Court's desire to correct obvious constitutional violations led to a 'somewhat expansive notion of jurisdiction . . . .'"  Id. (quoting Custis v. United States, 511 U.S. 485, 494 (1994)) (internal quotation marks omitted).

Id. at 64-65 (emphasis added) (citations omitted). Thus, Justice Holmes' analysis concludes that whether the charging instrument is sufficient or insufficient goes to the merits of the particular case--including whether the case is correctly or wrongly decided--but does not deprive the federal district court of cognizance of the crime in the first instance, nor of the power to adjudicate that crime. See also Cotton, 535 U.S. at 631 (quoting United States v. Williams, 341 U.S. 58, 66 (1951), for its holding that a defective indictment "does not affect the jurisdiction of the trial court to determine the case presented by the indictment"). Under Cotton, Lamar, and Williams, criminal subject-matter jurisdiction is the power granted by a legislative body to adjudicate certain crimes. These cases hold that an indictment that is defective for failing to charge an element of the offense does not deprive a court of its legislatively granted power.

Similarly, in United States v. Brown, 752 F.3d 1344 (11th Cir. 2014), the Eleventh Circuit noted that the Cotton decision and its own case law were in accordance with a rule that "an omission of an element from an indictment does not deprive the district court of jurisdiction." Id. at 1351. Brown found that to determine "whether an indictment defect is jurisdictional, we must ask the question whether the indictment charged the defendant with a criminal 'offense against the laws

of the United States.'" Id. (alteration omitted) (emphasis added).

> The district court's power over [the] case did not vanish simply because the indictment omitted one element of the charged offense. The omission of an element may render the indictment insufficient, but it does not strip the district court of jurisdiction over the case.
>
> So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an "offense against the laws of the United States" and, thereby, invokes the district court's subject-matter jurisdiction. The omission of an element of that offense does not mean that the indictment fails to do so; it means only that the indictment is missing an "allegation requisite to liability." This may allow the defendant to argue before a guilty plea that the indictment is insufficient and should be dismissed — but it does not deprive the district court of jurisdiction to act over the indictment or to accept a guilty plea.

Id. at 1353-54 (emphases added) (citations omitted) (quoting Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000); United States v. Peter, 310 F.3d 709, 715 (11th Cir. 2002)). Thus, it is clear that under federal law, the omission of an element of the charged offense in an indictment does not deprive the court of jurisdiction over the case.

C. **The omission of the public-road element from the OVUII charge did not eliminate subject-matter jurisdiction**

Schwartz has argued that the trial court lacked jurisdiction over the OVUII offense because the charging instrument failed to allege an essential element of the offense. Based on the holdings of this court in Jendrusch through Nesmith and Davis, it is clear that a charging instrument that fails to allege a culpable state of mind or an element of an offense may

- 33 -

result in a significant violation of due process, but the flawed

instrument does not abrogate the jurisdiction of the court,

which is established by statute and invoked by a charge of a

cognizable offense prescribed by law.[25]  Here, as noted, the

district court had jurisdiction over the OVUII charge under HRS

§§ 604-8 and 604-11.5.  Thus, the failure of the charging

instrument to fully allege the elements of the crime of OVUII as

set forth in HRS § 291E-61(a)(1) did not negate the charge's

fulfillment of the requirements under HRS Chapter 604

establishing the jurisdiction of the district court.

Consequently, Schwartz's contention that the district court

lacked jurisdiction of the OVUII charge against her is

incorrect.

> **D.**    **Analysis in <u>Christian v. State</u> is flawed**

<u>Christian v. State</u>, 131 Hawai'i 153, 315 P.3d 779 (App.

2013), provided the basis for the ICA's decision in the present

case.[26]  See <u>Schwartz</u>, No. CAAP-10-0000199 at *1 (affirming the

order denying Schwartz's petition "on the basis explained today

---

[25]    A charging instrument may be so deficient that a court does not have jurisdiction over the case; for instance, if the charging document was never filed.  See <u>State v. Kaulia</u>, 128 Hawai'i 479, 491, 291 P.3d 377, 389 (2013) (holding that because the State failed to properly file the complaint, "the district court lacked jurisdiction to proceed to trial").  Without deciding the matter, a charge that fails to fulfill the statutory requirements of jurisdiction, <u>see, e.g.</u>, HRS §§ 604-8 and 604-11.5, in contrast to the due process failure to properly state an offense, would appear to fail to confer jurisdiction upon the district court.

[26]    <u>Christian</u> was decided prior to this court's decision in <u>Davis</u>.

in Christian"). The relevant facts in Christian are substantively indistinguishable from the facts in Schwartz's case. See Christian, 131 Hawai'i at 155, 315 P.3d at 781. The defendant pleaded no contest to a charge of OVUII in 2008. Id. In 2010, the defendant filed an HRPP Rule 40 petition seeking to have his judgment set aside on the basis that a "defect in the charge was jurisdictional, and therefore his judgment of conviction was a nullity" because the charge failed to allege the public-road element. Id. at 156, 315 P.3d at 782. The district court denied the petition, and the defendant appealed to the ICA.

The ICA affirmed the denial on the grounds that although Wheeler created a new rule, the rule did not apply retroactively. Id. at 160, 315 P.3d at 786. The ICA reached this conclusion by looking at this court's analysis in State v. Ruggiero, 114 Hawai'i 227, 160 P.3d 703 (2007), and State v. Kekuewa, 114 Hawai'i 411, 163 P.3d 1148 (2007), and noted that in both cases, the decisions determined that the complaint could reasonably be construed to allege the crime of OVUII. Id. at 159, 315 P.3d at 785. The ICA reasoned that "by quoting the charges in Ruggiero and Kekuewa and then directing entry of judgment of conviction on the charges for OVUII as a first offense, [this court] implicitly held and concluded that the charges in Ruggiero and Kekuewa were sufficient to charge OVUII

as a first offense." Id. at 160, 315 P.3d at 786. Therefore, the ICA concluded that, since Ruggiero and Kekuewa approved charging instruments that did not specifically allege a public-road element, Wheeler's requirement that the State must allege a public-road element "announced a new rule." Id.

Additionally, the ICA held that even if the new rule did apply retroactively, the defendant in Christian could not demonstrate exceptional circumstances to overcome a "heightened interest in finality that attaches to cases on collateral review." Id. at 156, 315 P.3d at 782.

### 1. Guiding Principles in the Creation of New Rules

"[W]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." State v. Garcia, 96 Hawai'i 200, 211, 29 P.3d 919, 930 (2001) (quoting Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 177 (1990) (plurality opinion)) (internal quotation marks). The prototypical manner in which this court creates a new rule is when it overrules a previous decision and announces a superseding principle of law. See State v. Jess, 117 Hawai'i 381, 398—99, 184 P.3d 133, 150—51 (2008); see also James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534 (1991) (the paradigm case of nonretroactivity arises "when a court expressly overrules a precedent upon which

the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct").

In Jess, this court considered the continued viability of the intrinsic/extrinsic distinction between facts that must be alleged in charging an individual with a crime. Jess, 117 Hawai'i at 393—94, 184 P.3d at 145—46. At the time Jess was decided, the rule was that aggravating circumstances must be alleged by the State in the charging instrument and submitted to the jury for its consideration, State v. Apao, 59 Haw. 625, 634, 586 P.2d 250, 257 (1978), unless such circumstances constitute extrinsic facts--those that have no bearing on the issue of guilt, State v. Huelsman, 60 Haw. 71, 79, 588 P.2d 394, 400 (1978).

This court, in Jess, held that "the intrinsic/extrinsic distinction has lost its viability to the extent that it governs charging procedure and . . . decline to follow it any further." Id. at 398, 184 P.3d at 150. The result was to reverse the Huelsman qualification and cases reaffirming it, and revert to the original rule that requires all aggravating circumstances, regardless of whether they are intrinsic or extrinsic in nature, to be alleged when charging a crime. Id. at 398, 184 P.3d at 150.

Finding that the rule it announced was a new rule because it expressly overruled cases that distinguished between

extrinsic and intrinsic facts when charging an individual with a crime, the Jess court then considered whether to accord the new rule with retroactive effect. Id. at 401, 184 P.3d at 153. Ultimately, this court concluded, after weighing considerations pertinent to the issue of retroactivity, that the new rule should be given only purely prospective application to avoid substantial prejudice to prosecutions and the courts. Id. at 403, 184 P.3d at 155.[27]

Another classic situation in which this court establishes a new rule is when it announces a new principle of constitutional law, such as one applying to criminal prosecutions. In Tachibana v. State, for example, we held that under the Hawai'i Constitution, "trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the

---

[27] Another case in which a new rule was created by overruling precedent is State v. Ikezawa, 75 Haw. 210, 857 P.2d 593 (1993). In Ikezawa, this court reiterated that State v. Stone, 65 Haw. 308, 651 P.2d 485 (1982), was overruled by State v. Balauro, 73 Haw. 70, 828 P.2d 267 (1992), which held that the six-month period under HRPP 48(b), within which a criminal trial must be commenced, is tolled when a later charge is the same or is required to be joined with the original charge. Ikezawa, 75 Haw. at 221—22, 857 P.2d at 598—99. The Ikezawa court held that the principle stated in Balauro constituted a new rule and, after conducting a balancing test as to whether to apply the new rule retroactively, found that purely prospective application was more appropriate. Id.; see also State v. Santiago, 53 Haw. 254, 492 P.2d 657, 665—67 (1971) (holding that this court's decision in State v. Cuevas, 53 Haw. 100, 488 P.2d 322 (1971), in which we invalidated a statute imposing the burden upon a defendant to disprove the existence of malice once the act of killing is proved by the prosecution and which overruled cases that previously upheld the statute's validity, announced a new rule that should be accorded pipeline retroactive application).

defendant does not testify." 79 Hawai'i 226, 236 & n.7, 900 P.2d 1293, 1303 & n.7 (1995). Hence, this court concluded that the Tachibana colloquy was a new rule and that it should be applied only prospectively.[28] Id. at 238 & n.10, 900 P.2d at 1305 & n.10.

In contrast, in instances where this court engages only in statutory construction to elucidate the meaning and application of specific provisions of a statute, we have held that a new rule does not arise. In Garcia v. State, 125 Hawai'i 429, 263 P.3d 709 (2010), we examined whether our decision in State v. Tauiliili, 96 Hawai'i 195, 29 P.3d 914 (2001), constituted an announcement of a new rule. Tauiliili interpreted HRS § 706-671 to mean that presentence imprisonment credit should be applied, in cases where a defendant is sentenced to consecutive terms, only to the aggregate term of the sentence. See id. at 199, 29 P.3d at 918. Until that point, the practice was to apply the presentence imprisonment

---

[28] The U.S. Supreme Court has also identified the following instances in which it has created "an entirely new and unanticipated principle of law": where the (1) "ruling caused such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one"; (2) "disapproves a practice this Court arguably has sanctioned in prior cases"; (3) "or overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. United States v. Johnson, 457 U.S. 537, 551 (1982) (citations omitted) (internal quotations marks omitted). The decision in Wheeler does not fall under any of these categories.

credit to each of the consecutive terms.  See Garcia, 125 Hawaiʻi at 443—44, 263 P.3d at 723—24.

In Garcia, we stated that "Tauiliili was not a departure from precedent but, rather, confirmed the law as it existed prior to that decision."  Id. at 443, 263 P.3d at 723 (citing Rivers v. Roadway Express, Inc., 511 U.S. 298, 312—13 (1994)).  As such, we concluded that our holding in Tauiliili applied retroactively.  Id.

Finally, we have also held that where this court merely clarifies an existing legal principle, a new rule is not created.  See State v. Ketchum, 97 Hawaiʻi 107, 114 n.26, 34 P.3d 1006, 1013 n.26 (2001).  In Ketchum, this court considered whether the principle announced in State v. Ah Loo, 94 Hawaiʻi 207, 10 P.3d 728 (2000), constituted a new rule.  Ah Loo held that Miranda warnings must be administered "once a detainee becomes expressly or impliedly accused of having committed a crime—because the totality of the circumstances reflects either that probable cause to arrest the detainee has developed or that the officer's questions have 'become sustained and coercive.'" Ketchum, 97 Hawaiʻi at 124, 34 P.3d at 1023 (quoting Ah Loo, 94 Hawaiʻi at 212, 10 P.3d at 733).  We concluded that Ah Loo did not announce a new rule, but "merely clarified the existing proposition that a person temporarily and lawfully detained need

not be given <u>Miranda</u> warnings until the moment of express or implied accusation has arrived." <u>Id.</u> at 123 n.26, 34 P.3d at 1022 n.26.

### 2. <u>Wheeler</u> did not announce a new rule because it did not overrule <u>Ruggiero</u> or <u>Kekuewa</u>

The ICA's decision in <u>Christian</u> is predicated on its conclusion that this court implicitly ruled, in <u>Ruggiero</u> and <u>Kekuewa</u>, that a charge omitting the public-road element can nonetheless be reasonably construed to allege OVUII under HRS § 291E-61(a). <u>Christian</u>, 131 Hawai'i at 159—60, 315 P.3d at 785—86. In both <u>Ruggiero</u> and <u>Kekuewa</u>, at issue was the sufficiency of the charge in accusing the defendants of violating HRS § 291E-61(a) and (b)(2) as second-time OVUII offenders. <u>Ruggiero</u>, 114 Hawai'i at 239, 160 P.3d at 715; <u>Kekuewa</u>, 114 Hawai'i at 421—21; 163 P.3d at 1158—59. In both cases, we held that the charges were insufficient as a matter of law to accuse the defendants of violating HRS § 291E-61(a) and (b)(2) because they failed to allege the defendants' respective prior OVUII conviction but that they could reasonably be construed to charge OVUII as a first offense under HRS § 291E-61(a) and (b)(1). <u>Ruggiero</u>, 114 Hawai'i at 240, 160 P.3d at 716; <u>Kekuewa</u>, 114 Hawai'i at 425—26, 163 P.3d at 1162—63.

In <u>Wheeler</u>, the State argued that <u>Ruggiero</u> and <u>Kekuewa</u> established precedent that an OVUII charge lacking the public-

road element is not deficient. Wheeler, 121 Hawai'i at 396, 219 P.3d at 1183. This court disagreed, explaining that

> Ruggiero and Kekuewa focused on whether a charge that failed to adequately allege that the defendant had a prior OVUII conviction within the past five years was nevertheless sufficient to charge a first-offense OVUII. Neither defendant raised the issue of whether the proscribed conduct must take place "upon a public way, street, road, or highway" and, if so, whether it had been adequately alleged in the charge.

Id. at 399, 219 P.3d at 1186 (emphasis added). The Wheeler court reasoned that Ruggiero and Kekuewa "are limited to the issues that were actually decided by the court [in those cases], and are not dispositive of the distinct issue presented [in Wheeler, i.e., whether the public-road element must be alleged in the charging instrument.]" Id. at 399, 219 P.3d at 1186 (citing Webster v. Fall, 266 U.S. 507, 511 (1925); E&J Lounge Operating Co., Inc. v. Liquor Comm'n of City & County of Honolulu, 118 Hawai'i 320, 338, 189 P.3d 432, 450 (2008)).[29]

---

[29] Additionally, the Wheeler court reasoned that "Ruggiero and Kekuewa are factually distinguishable from the circumstances of [Wheeler]." Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186. Because the defendants in both cases failed to make "a timely objection to the sufficiency of the OVUII charge in the trial court," id., the "Motta/Wells post-conviction liberal construction rule" applied, id. (quoting State v. Merino, 81 Hawai'i 198, 212, 915 P.2d 672, 688 (1996)) (internal quotation marks omitted). Under this analysis, a charging instrument is presumed valid, and a conviction will not be reversed because of a defective charging instrument, unless the defendant demonstrates prejudice or the complaint cannot be reasonably construed to charge a crime. Id. at 399—400, 219 P.3d at 1186—87. In contrast, "because Wheeler timely objected to the oral charge in the district court, the Motta/Wells analysis [wa]s not applicable [in Wheeler]." Id. at 400, 219 P.3d at 1187. This factual distinction between Wheeler, on the one hand, and Ruggiero and Kekuewa, on the other--which essentially resulted in the application of differing analytical standards--was another reason why the court held in Wheeler that Ruggiero and Kekuewa were not governing precedent. Id.

As we recognized in Wheeler, our decisions in Ruggiero and Kekuewa did not hold that a charge accusing an individual of OVUII, in violation of HRS § 291E-61(a), is sufficient without the public-road element. The fact that this court in Ruggiero and Kekuewa did not address the public-road element was not equivalent to a holding that it was not a required element of OVUII; it meant only that the issues challenged in those cases provided neither a reason nor the necessity for this court to consider this element. See id. at 396, 219 P.3d at 1184 (stating that Ruggiero and Kekuewa "do not require a contrary result").

Accordingly, our conclusion in Wheeler--that "HRS § 291E-1 [requires] that the defendant's conduct occur 'upon a public way, street, road, or highway'"--was not a new rule, see Wheeler, 121 Hawai'i at 392, 219 P.3d at 1179, because unlike Jess, Wheeler did not overrule or modify any previous precedent of this court dealing with the same issue.[30] Cf. Jess, 117

_____

[30] Nonetheless, according to the concurrence, "Walker clarified that Wheeler did, in fact, render Ruggiero and Kekuewa unreliable for the proposition that a defendant who is not given fair notice of the public roads element may . . . be convicted of OVUII as a first offense." Concurrence at 23. To support this assertion, the concurrence relies quite heavily on a quote from Walker stating that the "current essential elements that the State must include in an OVUII charge differ from those required in 2007 at the time of the Ruggiero and Kekuewa decisions." Concurrence at 19 (quoting Walker, 126 Hawai'i at 490, 273 P.3d at 1176). However, the validity of this statement from Walker is plainly problematic.

Generally, a crime or offense is governed by the law existing at the time it was committed. See State v. Martin, 62 Haw. 364, 370, 616 P.2d
(continued . . .)

Hawai'i at 398, 184 P.3d at 150 (abandoning the intrinsic/extrinsic distinction that once governed the kind of aggravating facts that must be alleged in a charging instrument). Wheeler had no need to overrule Ruggiero or Kekuewa because those cases neither addressed the issue of statutory construction that Wheeler did, nor are their facts similar or analogous to the facts of Wheeler.[31]

_____

(. . . continued)
193, 197—98 (1980) (holding that "all the elements necessary to prove a crime charged under the Hawaii Penal Code must be shown to have occurred after its effective date"); Tachibana, 67 Haw. at 577, 698 P.2d at 291 (stating that the defendant was properly charged under the pre-Hawai'i Penal Code law because the underlying act was committed before the effective date of the Penal Code). It naturally follows that a charge must be compliant with the governing law existing at the time the offense was committed.

The underlying conduct that comprised the charged offense in Wheeler occurred on May 31, 2007. Wheeler, 121 Hawai'i at 386—87, 219 P.3d 1170—74. Hence, for charging purposes, the law that governed was the OVUII statute as it existed in 2007. It is therefore inaccurate to say that the OVUII law post-Wheeler was any different than that existing pre-Wheeler, because the requirements set forth in Wheeler were themselves applied to a charge that dated back to 2007. Accordingly, the Walker quote is a misstatement ("essential elements that the State must include in an OVUII charge differ from those required in 2007").

[31] This court has previously applied Wheeler retroactively in cases in which an OVUII charge lacked the public-road element without discussion of whether Wheeler announced a new rule. See Garcia, 125 Hawai'i at 443, 263 P.3d at 724 (holding that "retroactivity is assumed unless a 'new rule' is announced"). These post-Wheeler decisions include the following cases: State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011) (applying Wheeler, which was decided in November 2009, to an August 2008 complaint charging defendant with OVUII, and holding that under the liberal construction standard, the charges, read with reference to each other, were sufficient to allege the public-road element to support the OVUII conviction); Walker, 126 Hawai'i at 489, 273 P.3d at 1175 (applying Wheeler to an April 21, 2008 felony information and complaint and holding that the charging instruments could not be reasonably construed to charge OVUII because the public-road element was not alleged); id. at 493, 273 P.3d at 1179 (Recktenwald, C.J., concurring) (agreeing with the majority that Wheeler's public-road element applied to the April 21, 2008 charging instruments).

As it is clear that Wheeler did not overrule precedent, it did not announce a new rule.

### 3. Wheeler Engaged in Statutory Interpretation to Effectuate a Settled Constitutional Principle

Wheeler is best understood as a case applying the settled constitutional requirement that "an 'accusation must sufficiently allege all of the essential elements of the offense charged.'"  Id. (quoting Merino, 81 Hawai'i at 212, 915 P.2d at 686).  Specifically, Wheeler involved an inquiry into whether the OVUII charge at issue in that case was legally sufficient. Wheeler, 121 Hawai'i at 391, 219 P.3d at 1178.  In conducting this inquiry, the Wheeler court utilized settled canons of statutory construction to identify the elements of OVUII that must be alleged in order to satisfy the dictates of due process. See id. at 391—93, 219 P.3d at 1178—80 (applying principles of statutory construction in interpreting the word "operating").

Using principles of statutory construction, we concluded in Wheeler that "HRS § 291E-1 establishes an attendant circumstance of the offense of OVUII, i.e., that the defendant's conduct occur 'upon a public way, street, road, or highway.'" Id. at 392, 219 P.3d at 1179.  Because an attendant circumstance is an element of an offense, we held that "the operation of a vehicle on a public way, street, road, or highway is an . . .

element of the offense" that must be alleged in an OVUII charge.
Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180.

Against this foregoing background, it cannot be said
that Wheeler created a new rule.  For one, Wheeler merely
applied the constitutionally settled principle that all elements
of an offense must be alleged in order for the charging
instrument to be legally sufficient.[32]  See Yates v. Aiken, 484
U.S. 211, 216—17 (1988) (explaining that Francis v. Franklin,
471 U.S. 307 (1985), merely applied the constitutional rule that

---

[32]    The concurrence asserts that Wheeler created a new rule because
"it imposed an obligation on the State that was not compelled by prior law."
Concurrence at 19.  However, the obligation we set forth in Wheeler--that the
State must allege the statutory definition of "operating" when charging
OVUII--is merely a particularized application of the elementary precept that
a charge must allege all elements of the offense.  In short, what the State
was obligated to do in Wheeler, and after Wheeler, was essentially the same
as what the State was obligated to do before Wheeler: to charge a person with
all of the elements of the offense of which he or she is accused.  Thus,
prior law, which required all elements of an offense to be alleged, did impel
the result in Wheeler.

        It is equally inaccurate to say that "Wheeler broke new ground by
establishing a constitutional rule."  Concurrence at 21 (emphasis added).
Wheeler merely applied a well-established constitutional principle to the
context of OVUII charging.  Even assuming such a rule were applicable, there
are no indicia that Wheeler could have been decided to yield a "reasonable
contrary conclusion[]."  See Butler v. McKellar, 494 U.S. 407, 415 (1990)
(emphasis added) (noting a circuit split between the Fourth and Seventh
Circuit Courts of Appeals as an indication that the result in Arizona v.
Roberson, 486 U.S. 675 (1988), "was susceptible to debate among reasonable
minds").  The ICA unanimously decided the case in a two-page summary
disposition order relying on settled law that the charge failed to allege an
attendant circumstance of the offense.  State v. Wheeler, 120 Hawai'i 256, 203
P.3d 676 (App. 2009) (summary disposition order) (citing HRS § 702-205 and
Jendrusch in concluding that the charge was insufficient).  This court was
similarly unanimous.  See Wheeler, 121 Hawai'i at 385, 219 P.3d at 1172.  It
was not debatable whether the failure to allege the public-road element
(i.e., the definition of "operating") yields a sufficient charging
instrument, because this would have been in derogation of a settled
constitutional principle.  See State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d
1242, 1244 (1977) (noting that a charge omitting an element of the offense
constitutes a denial of due process).

governed the Court's decision in <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979), "that the Due Process Clause of the Fourteenth Amendment prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof enunciated in <u>Winship</u> on the critical question of intent in a criminal prosecution" (quoting <u>Francis</u>, 471 U.S. at 326—327)).  Further, this court's elucidation in <u>Wheeler</u> on the meaning of "operating" in the OVUII statute, which was based on our application of canons of statutory construction, <u>see</u> <u>Wheeler</u>, 121 Hawai'i at 390—93, 219 P.3d at 1177—80, similarly did not create a new rule.  When this court announces a legal principle grounded in its understanding of a particular statute, it merely expresses in definitive terms what that statute has always meant, both before and after that decision is handed down.  <u>See</u> <u>Rivers</u>, 511 U.S. at 312—13 n.12 ("[I]t is not accurate to say that the Court's decision in <u>Patterson</u> 'changed' the law that previously prevailed . . . when this case was filed.  Rather, . . . the <u>Patterson</u> opinion <u>finally decided</u> what § 1981 had <u>always</u> meant and explained why the Courts of Appeals had misinterpreted the will of the enacting Congress." (first emphasis added)).[33]

---

[33]    <u>See also</u> <u>United States v. Rivera-Nevarez</u>, 418 F.3d 1104, 1107 (10th Cir. 2005) ("Decisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant."); <u>In re Blackshire</u>, 98 F.3d 1293, 1294 (11th Cir.

(continued . . .)

It is true that <u>Wheeler</u> was the first time that we announced the necessity of alleging the public-road element when the State charges an individual with OVUII. But the fact that it was an addition to our jurisprudence does not mean it was "new" under principles governing the creation of a new rule. <u>Wheeler</u> is similar to <u>Tauiliili</u> inasmuch as it interpreted HRS § 291E-1 to definitively and authoritatively explain what that statute always meant (but was left unsaid) since its enactment, and <u>Wheeler</u> did not change or modify the requirements or the meaning of HRS § 291E-1. See <u>Rivers</u>, 511 U.S. at 312—13 (explaining that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction"); <u>cf.</u> <u>Tauiliili</u>, 96 Hawai'i at 199, 29 P.3d at 918 (construing for the first time HRS § 706-671 (1993) to mean that presentence imprisonment credit should be credited only to the aggregate term of consecutive sentences).

_____

(. . . continued)
1996) (holding that the U.S. Supreme Court's interpretation of 18 U.S.C. § 924(c) in an earlier case was not an expression of a new rule because the Court "merely interpreted a substantive criminal statute using rules of statutory construction"); <u>Nuñez v. United States</u>, 96 F.3d 990, 992 (7th Cir. 1996) (stating that a prior U.S. Supreme Court decision did not announce a new rule of constitutional law because it merely engaged in statutory interpretation); <u>United States v. Lorentsen</u>, 106 F.3d 278, 279 (9th Cir. 1997) (accord); <u>In re Vial</u>, 115 F.3d 1192, 1195-96 (4th Cir. 1997) (accord); <u>United States v. McPhail</u>, 112 F.3d 197, 199 (5th Cir. 1997) (holding that a prior U.S. Supreme Court decision did not present a new rule of criminal procedure but merely interpreted a statute).

The concurrence contends that <u>Wheeler</u> created a new rule "because it held that the State's routine charging practice was unconstitutional despite this court's contrary directives in <u>Ruggiero</u> and <u>Kekuewa</u>."[34] Concurrence at 20. Because this court remanded <u>Ruggiero</u> and <u>Kekuewa</u> for entry of judgment and resentencing, and because this court in those cases did not opine as to the meaning of "operating" and the public-road element of OVUII, the concurrence posits that "this court had provided a degree of judicial approval over the practice of charging OVUII in the language of the statute." Concurrence at 20.[35] That is, the concurrence suggests that this court endorsed

---

[34] To the extent the concurrence's conclusion that there are "four categories of cases that delineate when a new rule is established" could be read as enumerating an <u>exhaustive</u> list of categories, concurrence at 8, it is overly restrictive. The inquiry into whether a rule is new or preexisting is not accurately conducted by classifying a wide variety of cases in which this issue may arise under inflexibly delineated categories; oftentimes, a rule promulgated by a case is best characterized as existing on a spectrum, one end of which constitutes rules that are clearly preexisting and the other end composed of clearly new rules. See <u>Teague v. Lane</u>, 489 U.S. 288, 301 (1989) ("It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes."). Hence, the concurrence's sweeping list of four categories of cases that "delineate[s] when a new rule is established" is not helpful.

[35] For this proposition, the concurrence relies upon <u>Johnson</u>, 457 U.S. 537, where the U.S. Supreme Court has recognized that as far as federal retroactivity jurisprudence is concerned, a new principle of law is announced when a case "disapproves a practice [that it] arguably has sanctioned in prior cases." <u>Id. at</u> 551. However, this class of cases disavowed previous decisions that expressly sanctioned the practices involved. See <u>Gosa v. Mayden</u>, 413 U.S. 665, 673 (1973) (holding that "[t]he Court long and consistently had recognized that military status in itself was sufficient for the exercise of court-martial jurisdiction," a view that was later disavowed by the Court); <u>Johnson v. New Jersey</u>, 384 U.S. 719, 731 (1966) (recognizing that the Court's previous cases approved of in-custody interrogation even though there was a "failure to warn accused persons of their rights[] or the failure to grant them access to outside assistance," cases that <u>Miranda</u> later
(continued . . .)

sub silentio in Ruggiero and Kekuewa the then-prevailing practice by the State of charging OVUII without the public-road element.

It bears repeating that this Court clarified in Wheeler that "Ruggiero and Kekuewa focused on whether a charge that failed to adequately allege that the defendant had a prior OVUII conviction within the past five years was nevertheless sufficient to charge a first-offense OVUII." Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186. As mentioned, "the issue of whether the proscribed conduct must take place 'upon a public way, street, road, or highway' and, if so, whether it had been adequately alleged in the charge" was never raised, and "[a]s a result, this court did not address that issue in Ruggiero or Kekuewa." Id. Hence, this court concluded in Wheeler that Ruggiero and Kekuewa were dispositive only of the distinct issues presented in those cases. Id.

The dissent's suggestion--that this court's silence in Ruggiero and Kekuewa on the issue directly presented for the

_____

(. . . continued)
rendered nonbinding). In stark contrast, Ruggiero and Kekuewa were merely silent and in no way sanctioned the State's practice of charging OVUII without the public-road element derived from the statutory definition of "operating."

Further, if Wheeler were indeed a case that disapproved of a previously sanctioned practice, then the concurrence, consistent with what Johnson directs, should find that Wheeler is fully nonretroactive, see id. at 549—51, a conclusion that the concurrence does not reach, concurrence at 28.

first time in Wheeler was an implicit endorsement of the validity of the practice of not charging the public-road element--artificially extracts a holding from what was unaddressed.  This practice was soundly rejected in Wheeler, see id. (rejecting the State's contention that this Court had already decided in Ruggiero and Kekuewa that a charge omitting the public-road element is legally sufficient), and is of insignificant analytical value, see Texas v. Cobb, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); In re Stegall, 865 F.2d 140, 142 (7th Cir. 1989) ("A point of law merely assumed in an opinion, not discussed, is not authoritative.").[36]

Just because this Court has not explicitly and affirmatively rejected a legal proposition in no way means that it has effectively approved of it, especially given the fact that prudential rules limit this Court to consideration of issues presented by the peculiarities of a particular case and the issues raised by a party.  See Kapuwai v. City & Cnty. of Honolulu, Dep't of Parks & Recreation, 121 Hawai'i 33, 40, 211

---

[36]    The concurrence's assertion is analogous to the argument that the denial by the U.S. Supreme Court of certiorari is an implicit endorsement of the holding and reasoning of the case for which certiorari review was sought.  But it has long been settled that "denial of a writ of certiorari imports no expression of opinion upon the merits of the case."  United States v. Carver, 260 U.S. 482, 490 (1923) (Holmes, J.); accord Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363, 366, n.1 (1973).

P.3d 750, 757 (2009) ("[W]hile the courts of the State of Hawai'i are not bound by a 'case or controversy' requirement, we nonetheless recognize that the 'prudential rules' of judicial self-governance 'founded in concern about the proper—and properly limited—role of courts in a democratic society' are always of relevant concern.' For 'even in the absence of constitutional restrictions, <u>courts must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power</u> before acting.'" (citation omitted) (emphasis omitted) (quoting <u>Life of the Land v. Land Use Commission</u>, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981)) (internal quotation marks omitted)).

Additionally, the concurrence's analogy of <u>Wheeler</u> to <u>Payton v. New York</u>, 445 U.S. 573 (1980) is incongruous. In <u>United States v. Johnson</u>, 457 U.S. 537 (1982), the Supreme Court concluded that <u>Payton</u> "did not simply apply settled precedent to a new set of facts" and that the presumption of retroactivity was thus inapplicable. <u>Johnson</u>, 457 U.S. at 551. The concurrence's reliance on <u>Johnson</u> is flawed for two reasons: first, as fully explained <u>supra</u>, <u>Wheeler</u> did apply settled precedent to a new set of facts and did not break new ground; and second, the <u>Johnson</u> Court did not find that Payton established a new rule.

Contrary to the concurrence's assertion that <u>Johnson</u> found a new rule in the primary holding of <u>Payton</u>, a closer reading of <u>Johnson</u> reveals that this is not accurate. The question of retroactivity in <u>Johnson</u> was not predicated on whether the <u>Payton</u> rule was new. What the U.S. Supreme Court did was to identify three classes of cases in which the question of retroactivity had been conclusively decided by Supreme Court precedents. <u>Johnson</u>, 457 U.S. at 549–51. One of those classes is where a case "announce[s] an entirely new and unanticipated principle of law"; in those cases, the Supreme Court "almost invariably has gone on to find such a newly minted principle nonretroactive." <u>Id.</u> at 549. The Court expressly found that <u>Payton</u> did not fall under this class of cases. <u>Id.</u> at 551. Similarly, the Court determined that <u>Payton</u> did not fit the other two classes of cases where retroactivity is presumed.[37] As a result, the Court then analyzed <u>Payton</u> under a retroactivity test patterned after that advocated for by Justice Harlan.[38]

---

[37] These two classes are as follows: (1) "when a decision of this Court merely has applied settled precedents to new and different factual situations," it applies retrospectively; and (2) "full retroactivity [i]s a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place." <u>Johnson</u>, 457 U.S. at 549–51.

[38] The concurrence argues that "the Supreme Court had to have found that <u>Payton</u> was a new rule because it applied Justice Harlan's test." Concurrence at 7 n.2. It is true that Justice Harlan's test focuses on "<u>newly-declared</u> constitutional rule[s]," <u>Johnson</u>, 457 U.S. at 546 (emphasis added), and that in <u>Johnson</u>, the Court stated, "We now agree with Justice Harlan that '[r]etroactivity must be rethought,'" <u>id.</u> at 548 (quoting <u>Desist v. United States</u>, 394 U.S. 244, 258 (1969) (dissenting opinion)) (internal
(continued . . .)

The concurrence's reasoning behind its assertion that Payton announced a new rule appears to be based on the Supreme Court's finding that Payton "did not simply apply settled precedent" and, therefore, was not a preexisting rule. Johnson, 457 U.S. at 551. However, the fact that Payton was not a preexisting rule did not establish the converse: that Payton must be a new rule. Instead, unacknowledged by the concurrence is that the Supreme Court in fact found that Payton was not a new rule. Id. ("Payton also did not announce an entirely new and unanticipated principle of law.").[39] Hence, to the extent

_____

(. . . continued)
quotation marks omitted). The test that the Court adopted in Johnson, however, varies from that advocated by Justice Harlan. The test announced by Johnson is twofold: "We . . . examine the circumstances of this case to determine whether it presents a retroactivity question clearly controlled by past precedents, and if not," id., whether a limited retroactive application of Payton "would satisfy each of the three concerns stated in Justice Harlan's opinions in Desist and Mackey," id. at 554.

Thus, compared to Justice Harlan's test--"that all 'new' rules of constitutional law must, at a minimum, be applied to all those cases which are still subject to direct review by this Court at the time the 'new' decision is handed down," Desist, 394 U.S. at 258--the Johnson test was not founded upon whether the rule is new or not new. This approach partially differs from the approach that we employ. See Ikezawa, 75 Haw. at 221—22, 857 P.2d at 598—99 (analyzing whether a legal principle is new before proceeding to a balancing test to answer the retroactivity question).

[39] The concurrence agrees that Payton did not announce an entirely new and unanticipated principle of law, but it asserts that the rule in Payton was new because it fits "a second separate category of cases": those that break new ground. Concurrence at 5, 7 n.2. However, Johnson was clear that Payton did not break new ground. See Johnson, 457 U.S. at 551—52 (describing cases that broke new ground and concluding that Payton is not one of them). Further, cases that break new ground are merely a subset of cases that announce an entirely new and unanticipated principle of law, Johnson, 457 U.S. at 551—54, such that the concurrence's attempt at disassociating one from the other--characterizing each as a discrete group--is inaccurate. Concurrence at 7 n.2.

that the concurrence concludes that Wheeler announced a new rule
because it is similar to Payton, it is mistaken.

The concurrence additionally concludes that Wheeler
should not be applied to cases that have become final before
Wheeler was announced.  Concurrence at 28.  This conclusion is
grounded in a predicate finding that mischaracterizes Wheeler as
a case that announced a "new constitutional rule[] of criminal
procedure," concurrence at 27 (quoting Teague, 489 U.S. at 310).
As already explained, Wheeler merely applied an established
constitutional principle.  Hence, the rule from Teague
(acknowledged by this court in State v. Gomes, 107 Hawaiʻi 308,
113 P.3d 184 (2005)) is inapposite and has no application to
Wheeler.[40]

Finally, the concurrence maintains that our decision
on the issue of whether Wheeler applies retrospectively is
dictum because "it has no impact on [our] ultimate conclusion
that Schwartz waived her constitutional challenges by pleading
guilty."  Dissent at 22.  As this court has explained,

> an obiter dictum is a remark made or opinion expressed by a
> judge, in his decision upon a cause, by the way—that is,
> incidentally or collaterally and not directly upon the

---

[40]    It bears noting that the issue in Teague was whether to accord
retrospectivity to the constitutional requirement that jurors must be drawn
from a fair cross section of the community, a requirement that was not in
existence prior to the Supreme Court's decision in Taylor v. Louisiana, 419
U.S. 522 (1975).  In contrast, Wheeler involved the long-settled
constitutional requirement that a charge must set forth all elements of the
offense.

> question before the court; or is any statement of law
> enunciated by the judge or court merely by way of
> illustration, argument, analogy, or suggestion.

State v. Hussein, 122 Hawai'i 495, 513–14, 229 P.3d 313, 331–32 (2010) (emphasis added and omitted) (quoting Black's Law Dictionary 1177 (9th ed. 2009)) (internal quotation marks omitted) (alteration omitted).  Resolving the issue of Wheeler's retroactivity bears directly upon the question of whether Schwartz has any legal basis upon which she could predicate a challenge to the sufficiency of the charge against her, as a determination of a new rule could foreclose a challenge to the charge; hence, deciding the issue of retroactivity is a necessary component of the resolution of this case and not dictum.[41]

---

[41]     The concurrence's proposition is equivalent to an argument that this court's determination of whether a lower court erred is dictum when it is ultimately determined that any error is harmless.  See Michael C. Dorf, Dicta and Article III, 142 U. Pa. L. Rev. 1997, 2046 (1994).  However, as explained by Professor Dorf, deciding first whether the lower court erred "simply makes more sense . . . before deciding whether a putative error was harmless."  Id.  Analytically speaking, "until the court passes on the substantive question, it will not know exactly what the error is that it must test for harmlessness."  Id.  Because the determination of whether the lower court erred is meant to further "the purpose of resolving the case," it is not dictum.  Id.

        The same is true in this case.  The retrospective application of Wheeler forms an essential part of the analysis for why we conclude that Schwartz is precluded from challenging the legal sufficiency of the charge.  In fact, the effect of Schwartz' guilty plea upon her ability to challenge the charge becomes significant only after it is determined that Wheeler did not announce a new rule and was, therefore, applicable retrospectively.  Because our conclusion on retrospectivity is an integral part of our reasoning, it may not be seriously labeled as dictum.  See Hussein, 122 Hawai'i at 513–14, 229 P.3d at 331–32 (defining obiter dictum as a court's incidental or collateral remark that does not directly relate to the resolution of any of the issues presented).

Based on the foregoing, the ICA's holding in <u>Christian</u> that <u>Wheeler</u> announced a new rule is incorrect, and <u>Wheeler</u> applies retroactively. Because we hold that the failure to charge the public-road element of OVUII does not deprive the district court of criminal jurisdiction--that is, such a failure is a nonjurisdictional defect[42]--the retroactive effect of <u>Wheeler</u> does not provide a basis for post-conviction relief to Schwartz, who pleaded guilty to OVUII. <u>See</u> <u>Morin</u>, 71 Haw. at 162, 785 P.2d at 1318 (stating that a guilty or a nolo contendere plea "made voluntarily and intelligently precludes a defendant from later asserting any nonjurisdictional claims, including constitutional challenges to the pretrial proceedings"). Schwartz's guilty plea therefore precludes her from challenging the charge as being insufficient for failing to allege the public-road element of OVUII.

4.  **Adoption of an "exceptional circumstances" test for collateral review was unwarranted**

The ICA in <u>Christian</u> alternatively concluded that "[e]ven if the asserted deficiency in [the] charge is properly

---

[42]    Where the defect in the charging instrument is one that precludes the district court from exercising criminal jurisdiction--e.g., charging an offense that is not "cognizable" under state law or an offense that was committed outside the district court's circuit, <u>see</u> HRS §§ 603-21.5; 604-11.5; or if the offense charged is not "punishable by fine, or by imprisonment not exceeding one year whether with or without fine," HRS § 604-8; or if the charging instrument was never filed, <u>see</u> <u>supra</u> note 25, then the rule from <u>Morin</u> would not apply and a defendant may challenge such jurisdictional defects even after entry of a guilty or nolo contendere plea.

characterized as a jurisdictional defect, [it] would not require applying the Wheeler rule retroactively to [the defendant's] collateral attack of his conviction" because of an "overriding interest in finality" that distinguishes collateral review from direct review. Christian, 131 Hawai'i at 161, 315 P.3d at 787 (quoting United States v. Cuch, 79 F.3d 987, 991 n. 8 (1996)). Based on its determination that Wheeler should not be applied retroactively to the defendant's charge in the underlying conviction, the ICA concluded that Ruggiero and Kekuewa provided persuasive authority that the OVUII charge was sufficient and that under the Motta/Wells standard the defendant could not demonstrate either prejudice or that the charge could not be construed to charge a crime. Id. at 162, 315 P.3d at 788. Therefore, the ICA held that the defendant in Christian was not entitled to the relief sought in the HRPP Rule 40 petition. Id.

Although determining that the "new rule" had limited retroactive effect and that the defendant's HRPP Rule 40 petition was properly denied, the ICA observed that "[t]he Hawai'i Supreme Court . . . has not specifically addressed how a challenge to the sufficiency of a charge raised for the first time on collateral review should be evaluated." Id. at 163, 315 P.3d at 789. Based on the perceived lack of an evaluative standard, Christian adopted a test from the federal circuits that a defendant challenging the sufficiency of a charge for the

first time on collateral review must show "exceptional circumstances" to reflect "the heightened interest in the finality of judgments." Id. at 163-64, 315 P.3d at 789-80.

However, Wheeler did not establish a new rule, and the trial court in this case did not lack jurisdiction because of the omission of the public-road element from the OVUII charge brought against Schwartz. Additionally, the adoption of an "exceptional circumstances" test that must be satisfied by defendants seeking to challenge the sufficiency of charging instruments on collateral review was unwarranted in light of the various alternative bases advanced by the ICA to support its ruling, and further, the test is not in accordance with our law.[43] Accordingly, the decision in Christian is overruled.[44]

---

[43] The exceptional circumstance test, as adopted by the ICA, applies to defendants challenging the sufficiency of a charge for the first time on collateral review. However, HRPP Rule 40 does not assign any special standard for challenging a conviction based on the grounds asserted in the petition. See HRPP Rule 40. Although an HRPP Rule 40 challenge to a conviction on the grounds that the charge omitted an element has not been reviewed by this court, an HRPP Rule 40 challenge based upon a charge that reflected the alleged misconduct outside the statute of limitations has been considered, without reviewing the petition under any specialized standard. See Adams 103 Hawai'i at 224, 81 P.3d at 404 (reviewing de novo the denial of an HRPP Rule 40 challenge of a conviction on the grounds, inter alia, that the charge was defective).

Adopting varying standards of review to evaluate an HRPP Rule 40 petition that would depend on the grounds alleged is an approach that this court has not previously applied and would unnecessarily complicate our law regarding post-conviction relief. Our review in this case did not employ a specialized standard. In light of our jurisprudence with regard to Rule 40 petitions, the "exceptional circumstances" standard is rejected.

[44] State v. Kam, 134 Hawai'i 280, 339 P.3d 1081 (App. 2014) recognized that Davis "is inconsistent with the theory that a defect in a charge for failing to allege the requisite mens rea is jurisdictional in

(continued . . .)

### E.        Resolution of the Application

We resolve as follows the threshold question presented in Schwartz's Application: the failure of a charging instrument to allege an element of an offense does not constitute a jurisdictional defect that fails to confer subject-matter jurisdiction to the district court.  Secondly, we conclude that Wheeler did not establish a new rule; thus, Schwartz's contention pertaining to the retroactive applicability of the new rule to cases on collateral review is inapposite.  Schwartz's third question, whether "a defective charge under Wheeler, even if properly characterized as a jurisdictional defect cannot be retroactively applied on collateral review," is rendered moot by our response to the threshold question.

Accordingly, Schwartz's Rule 40 petition was properly denied as the district court had jurisdiction to accept her plea to the OVUII charge and enter judgment.

---

(. . . continued)
nature" and concluded on that basis that the failure of an indictment to allege the requisite mens rea did not present a "jurisdictional impediment." 134 Hawai'i at 285, 339 P.3d at 1086.  Kam did not cite Christian.

The ICA opinion in Christian concludes that the defendant "failed to show that the offense charged was one of which the sentencing court manifestly had no jurisdiction" and that "the charge was not so deficient that the trial court manifestly lacked jurisdiction."  Christian, 131 Hawai'i at 164-65, 315 P.3d at 790-91.  This conclusion appears to create a confusing new standard for measuring a court's lack of jurisdiction--"manifest lack of jurisdiction"--which we do not adopt.

## V.    CONCLUSION

In accordance with the prior decisions of this court, the criminal jurisdiction of the district court is provided by HRS Chapter 604; here, the district court had jurisdiction over the OVUII charge alleged against Schwartz by satisfaction of the requirements set forth in that chapter.  Subject-matter jurisdiction is not abrogated by a charging instrument that fails to allege a culpable state of mind or a statutory element defining the offense; thus, the fact that the OVUII charge failed to allege an element of the offense did not extinguish the criminal jurisdiction of the district court.

Based on the foregoing, we overrule Cummings and Walker insofar as the holdings of those decisions indicate that a charge, information, or indictment that fails to allege either the requisite mental state or an element of the charged offense deprives a trial court of subject-matter jurisdiction.  In addition, as explained, the decision in Christian is also overruled.

The denial of Schwartz's Rule 40 petition is therefore affirmed, but for the reasons set forth in this opinion.

| | |
|---|---|
| Hayden Aluli<br>for petitioner | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Renee Ishikawa Delizo<br>for respondent | /s/ Glenn J. Kim |

